**ARCHITECTURAL RESOURCES, INC., Plaintiff–Appellant,**

v.

**Donald J. RAKEY and Shirley J. Rakey, Defendants–Third–Party Plaintiffs– Respondents,**

v.

**John A. COOPER, et al., Third–Party Defendants–Appellants.**

No. 20030.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 29, 1995.

John E. Curran and Julie J. McNitt, Curran & Clifford, Osage Beach, for plaintiff-appellant and third-party defendants-appellants.

Thomas E. Loraine and Roger M. Gibbons, Osage Beach, for defendants-third-party plaintiffs-respondents.

SHRUM, Chief Judge.

Architectural Resources, Inc. (ARI) and JCA Architects, Inc. (JCA)[1] complain on appeal that the trial court erred in taxing expert witness fees as costs. We agree and reverse and remand with directions on that issue.

1. Collectively, we refer to ARI and JCA as "Appellants." Although John A. Cooper is named as an appellant in the notice of appeal and in other documents filed with this court, the claims of trial court error affect only Appellants, not Cooper.

In a second point, ARI contends that the trial court abused its discretion as to the size of an attorney fee award. We disagree and affirm the trial court's judgment against ARI for $35,000 in attorney fees.

ARI brought this action against Donald J. Rakey and Shirley J. Rakey (Rakeys) seeking damages of $5,503.86, the balance allegedly due ARI on a "Stipulated Sum" construction contract ("Rakey/ARI" contract). Under the Rakey/ARI contract, ARI was to renovate and make additions to Rakeys' house. Rakeys signed the contract in June 1987, as did John A. Cooper (Cooper). Cooper, a licensed architect, was president, director, and principal owner of ARI. There were no other signatories to the Rakey/ARI contract.

Rakeys filed a three-count counterclaim against ARI. Count I sought damages because of ARI's alleged breach of contract and Count II requested a setoff against any amounts allegedly owed by Rakeys to ARI. In Count III, Rakeys sought reimbursement for their attorney fees and other expenses related to the litigation. The latter claim was based on this language contained in the Rakey/ARI contract:

> "It is ... agreed that if either party finds it necessary to file suit for breach of contract, all attorney fees, court costs, and other related costs will be at the expense of the party judged to be at fault."

Hereafter we refer to the foregoing as the "litigation cost" provision.

In addition to their counterclaim, Rakeys filed a third-party petition against JCA, a Missouri corporation engaged in the business of providing architectural services to the public. They also joined Cooper, individually,[2] as a third-party defendant. Rakeys alleged that JCA, acting through its employee Cooper, provided architectural services for the renovation of Rakeys' house pursuant to a written proposal made by JCA in December 1986 and accepted by Rakeys in January 1987 ("Rakey/JCA" contract). There is no "litigation cost" paragraph in the Rakey/JCA contract.

In Count I of their third-party petition, Rakeys sought indemnity from JCA and Cooper for any sums adjudged due ARI from Rakeys. They also sought damages from JCA and Cooper based on theories of negligent design (Count II) and breach of contract (Count III).

Following a nonjury trial, the court entered a judgment that was favorable to Rakeys and adverse to Appellants and Cooper. Regarding Count III of Rakeys' counterclaim, the trial court ordered ARI to pay Rakeys $35,000 of their attorney fees. As to other litigation costs, the trial court ruled: "Costs are ordered taxed to ARI and JCA. Court costs shall include all expert witness fees and deposition costs."

In their first point, Appellants contend that the trial court erred in ordering that taxable court costs "shall include all expert witness fees." This point is meritorious.

■ Missouri courts have historically adhered to the "American rule" that with certain exceptions, litigants bear the expense of their own attorney fees, *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d. 327, 340[23] (Mo.App.1991), and of paying the fees of the experts needed to make their case. *See Anderson v. Howald*, 897 S.W.2d 176, 181[9] (Mo.App.1995) (quoting *Nichols v. Bossert*, 727 S.W.2d 211, 213–14[3] (Mo.App. 1987)). *See Mo. Damages*, § 19.2 (Mo.Bar 1988). Two of the more common exceptions to this rule fit into these categories: recovery of fees pursuant to contract and recovery of an item of damages to a wronged party involved in collateral litigation. *Brown*, 820 S.W.2d at 340[22].

Where a contract does provide for the payment of attorney fees and expenses incurred in the enforcement of a contract provision, it is error to fail to make such an award to the prevailing party. *Schnucks v. Bridgeton Health and Fitness, Inc.*, 884 S.W.2d 733, 739[14] (Mo.App.1994); *Jackes–Evans Manufacturing Company v. Christen*, 848 S.W.2d 553, 557[5] (Mo.App.1993).

■ Costs were unknown to common law and statutory provisions allowing them

---

2. Cooper was also president, director, and principal owner of JCA.

are strictly construed. *In re Thomasson*, 159 S.W.2d 626, 628[4] (Mo.1942). Consequently, a litigant bears a heavy burden to show cause for departure from the usual and customary rule that each party must bear his or her own expenses of litigation. *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 342[7] (Mo. App.1986). An item is not taxable as costs unless it is specifically authorized by statute, or by agreement of the parties. *Groves v. State Farm Mutual Automobile Insurance Company*, 540 S.W.2d 39, 44[9] (Mo.banc 1976).

Missouri has no statute that authorizes "'the allowance of ... expert witness expense as costs, other than the allowance of the usual daily witness fee payable to all ordinary witnesses under § 491.280 V.A.M.S.'" *Anderson*, 897 S.W.2d at 181 (quoting *McClue v. Epsten*, 492 S.W.2d 97, 98) (Mo.App.1973)).

■ Here, the "litigation cost" provision in the Rakey/ARI contract expressly entitles the prevailing party to an award of "attorney fees, court costs, and other related costs." Moreover, the trial court's apparent interpretation of "other related costs" as embracing "expert witness fees" is not erroneous. Nevertheless, the trial court erred when it ordered recovery of expert witness fees under the guise of "[c]osts ... taxed to ARI and JCA." As noted above, provisions relating to assessment of court costs must be strictly construed. *Thomasson*, 159 S.W.2d at 628[4]. "Strict construction recognizes nothing that is not expressed.'" *McClue*, 492 S.W.2d at 98 (quoting *State ex rel. Wander v. Kimmel*, 256 Mo. 611, 165 S.W. 1067, 1073 (1914)). It is too clear to admit of any doubt that the Rakey/ARI contact did not extend authority to the trial court to allow expert witness fees as costs. *See Swift Transportation Co., Inc. v. Swearengin*, 709 S.W.2d 130, 136–37 (Mo.App.1986) (Appellate court directed that trial court enter non-statutory but recoverable expense of litigation as a separate award or judgment and not tax any part thereof as statutory costs). As the trial court lacked authority to assess expert witness fees as court costs, that portion of the judgment should be set aside. *See Groves*, 540 S.W.2d at 44[10].

■ In reaching our conclusion we have considered but rejected Rakeys' contention that the collateral litigation exception to the American rule authorized the trial court to tax expert witness fees as costs against JCA. The collateral litigation exception urged by Rakeys provides that "[w]here ... the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees ... *are proper items of damages.*" *Brown*, 820 S.W.2d at 340 (quoting *Johnson v. Mercantile Trust Company National Association*, 510 S.W.2d 33, 40[6] (Mo.1974)) (emphasis ours). Case authority exists for the proposition that recovery of the expenses of litigation other than attorney fees is possible under the collateral litigation exception. *See Miller v. Higgins*, 452 S.W.2d 121, 125 (Mo.1970); *Myers v. Adler*, 188 Mo.App. 607, 176 S.W. 538, 541 (1915). However, Missouri's appellate courts have never approved recovery of litigation expenses under this exception *as taxable costs;* rather, they are recoverable as *items of damages.* Rakeys' argument on this issue is unsupported by authority and is rejected.

■ We also consider Rakeys' urging that we consider exercising our power under Rule 84.14 to modify the judgment by entering a separate award or judgment against JCA and ARI for Rakeys' expert witness fees. They argue that the evidence and record before this court clearly shows that Rakeys were entitled to recover their expert witness fees from JCA and ARI, that such fees totalled $21,585.75, and consequently, we can and should enter judgment against Appellants in that amount. We disagree. Rakeys did not include in their third-party petition a claim against JCA for attorney fees or expert witness fees. Rakeys' failure to plead facts showing that they were entitled to attorney fees from JCA and their failure to demand judgment for that relief explains why the trial court did not award attorney fees to JCA. Rule 84.14 does not authorize this court to enter a judgment against JCA for the expert witness expense incurred by Rakeys when they never filed or presented such a claim to the trial court.

In these circumstances, the proper course is to reverse that portion of the judgment that purported to assess expert witness fees as court costs, and to remand to the trial court for it to consider whether a separate award of such fees and expenses is warranted and, if so, how much and against whom. *See Swift Transportation,* 709 S.W.2d at 137. If the trial court awards expert witness fees as a separate item of damage, it should identify any deposition expenses incurred that are taxable as costs, thereby ensuring that those items are not included in the expense award. *Id.*

ARI makes an additional assignment of trial court error, namely, that the trial court erred in awarding Rakeys $35,000 for their attorney fees under Count III of their counterclaim against ARI because an award of that amount was arbitrary, unreasonable, and indicates a lack of careful consideration.

Rakeys' evidence supporting its claim for attorney fees came from two witnesses and exhibit RRRR. Shirley Woods, paralegal for Rakeys' lawyer, testified that the total fees "for the representation of the Rakeys" were $61,812.75 and law firm expenses were $4,763.62. Those totals did not include any of the expert witness fees incurred. Woods identified Exhibit RRRR as containing "all of the invoices submitted by the lawfirm [sic] to [Rakeys] and all of the time records supporting those invoices" and with that identification, the exhibit was offered and received in evidence without objection. Woods explained that certain orange "markings" or "slips" affixed as tabs to exhibit RRRR were used to "identify particular actions [or events that occurred during] ... the lawsuit."

Rakeys' lawyer testified that his hourly rate varied over the course of the litigation but that the rates charged Rakeys were "fair and reasonable." He further testified that the "orange tags" on exhibit RRRR were his attempt "to make a division," and that "was the sum and substance of the orange tags." Continuing, he explained:

"But my point in bringing those matters out was that I could not find a rational way to distinguish ... Cooper's involvement in the lawsuit, whether it was in terms of ARI of JCA or ... Cooper as an architect, other than do it in terms of pleadings. We did—we could not separate the evidence."

In rendering its judgment on attorney fees, the trial court remarked:

"The contract clearly allows for attorney fees, court costs and related costs if an action is filed and pursued for breach of contract. It is also true that this provision is only contained in the contract with ARI and should apply only to the breach of contract claim.

. . . .

On Count III of [Rakeys'] Counterclaim, [Rakeys] requested attorney fees. All payments for attorney fees prior to September 24, 1991, when JCA and Cooper were added as parties, dealt only with ARI. After September 24, 1991[,] other claims and parties were involved besides the breach of contract claim between Rakey and ARI. However, because of the inability to separate Cooper's acts to JCA or to ARI, and because much of the testimony is applicable to all claims, the Court assesses the attorney fees at $35,000.

In developing this point relied on, ARI does not challenge Rakeys' evidence that their total attorney fee bill for this case was $61,812.75 and that the fees charged were "fair and reasonable." Instead, ARI claims that the trial court abused its discretion when it set $35,000 as the portion of the total attorney fees properly allocated to the ARI/Rakey contract. It insists that remarks by the trial judge as she rendered the judgment and also the testimony of Rakeys' lawyer demonstrate that any allocation between recoverable fees (legal services rendered only with respect to the Rakey/ARI claims and counterclaims) and the remainder of the fees was "difficult or impossible to do." With that as its premise, ARI claims that no evidentiary basis existed for allocating attorney fees after Rakeys brought JCA and Cooper into the lawsuit and consequently, the trial court abused its discretion in setting attorney fees at $35,000, rather than $13,051.62 (the latter being the amount of attorney fees incurred by Rakeys before they filed their third-party petition against JCA and Cooper). We disagree.

■ Trial courts are considered to be experts on the question of attorney fees, *Roberts v. McNary,* 636 S.W.2d 332, 338 [15] (Mo. banc 1982), and do not require any evidence or other opinion as to their value. *Schnucks,* 884 S.W.2d 733, 740 [17] (citing *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 [17] (Mo. banc 1980)).

As more fully explained in *Roberts:*

"The setting of attorneys' fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration.... In the absence of evidence to the contrary, it is presumed that the allowance of attorneys' fees was for compensable services and that no allowance was made for non-compensable services.... Thus, the burden was on appellants to affirmatively establish that the compensation allowed was a clear or manifest abuse of sound judicial discretion.... Moreover, in the absence of contrary evidence, the trial court is presumed to know the character of the services rendered in duration, zeal and ability, and to know the value of them according to custom, place and circumstance...."

*Id.* at 338 [16–19] (citations omitted).

■ Here, ARI has not met its burden of establishing that awarding $35,000 in attorney fees to Rakeys "was a clear or manifest abuse of ... discretion." First, ARI concedes that Rakeys were "clearly entitled [to an award of attorney fees of $13,051.62] incurred ... prior to September 24, 1991...." Second, although the trial court stated it was unable "to separate Cooper's acts to JCA or to ARI," such remark must be read in context. We have examined the 1678–page transcript and agree with the trial court that "much of the testimony is applicable to all claims." As Rakeys' "combined attorney fees," i.e., $48,761.14,[3] were largely incurred in preparing and presenting evidence that was common to all disputes, the trial court did not abuse its discretion when it allocated $21,948.38 of the "combined attorney fees" to the ARI/Rakey litigation occurring after the

third-party petition was filed. *See Christine v. Luyties,* 280 Mo. 416, 217 S.W. 55, 60 [5] (1919).

In reaching this conclusion, we have considered the cases cited by ARI and find that they are not controlling or persuasive as they are factually dissimilar.

First, in *Brentwood Bank v. Rudman,* 538 S.W.2d 744 (Mo.App.1976), an appellant claimed that a bank which initially filed an interpleader action thereafter lost its disinterested status and was not entitled to the entire attorney fee award. *Id.* at 746. Because it was unclear from the record whether the court's award of fees was for all of the bank's attorney fees or was properly limited to services rendered in its role as a disinterested stakeholder, the Eastern District remanded with directions that the trial court conduct a hearing on that issue. In contrast, the record here clearly reveals that the $35,000 award was for that part of Rakeys' attorney fees that the trial court attributed to the ARI/Rakey litigation. The incomplete record in *Brentwood Bank* distinguishes it from this case.

In *Schnucks,* 884 S.W.2d 733, the trial court denied an attorney fee award on the ground that no evidence of reasonable value had been presented. The Eastern District reversed and remanded, noting that the trial court is an expert on attorney fees. In ordering a remand, the *Schnucks* court instructed the trial court to award attorney fees only for the claim under which they were properly recoverable. Here, unlike *Schnucks,* there was evidence of reasonable value adduced, following which the trial court allocated a proportion of the total fees to ARI.

In *O'Brien v. B.L.C. Insurance Company,* 768 S.W.2d 64 (Mo. banc 1989), the trial judge awarded attorney fees of $1,000 without a hearing. The plaintiff on appeal contended that the appropriate fee was $28,000. Our supreme court held that the trial court erred in not hearing evidence on the attorney fee issue and remanded for a hearing. After noting that the plaintiff was not enti-

---

**3.** By the phrase "combined attorney fee" we refer to the following: ($61,812.75 total fees) minus ($13,052.61 incurred before third-party petition filed) equals $48,760.14.

**682**

tled to an award of attorney fees on all counts, the *O'Brien* court observed: "The required segregation may be difficult, but must nevertheless be essayed." *Id.* at 71. Here, in contrast, the trial court heard considerable evidence on attorney fees and then made "[t]he required segregation."

Finally, in *Funding Systems Leasing Corporation v. King Louie International, Inc.,* 597 S.W.2d 624 (Mo.App.1979), the party seeking attorney fees made an offer of proof that its lawyers devoted a total of 222.75 hours to all of the litigation at a reasonable charge of $50 per hour. The trial court refused to award attorney fees and the Western District affirmed, reasoning thusly:

> "King Louie is not entitled to recover that part of its attorneys' fees representing its cost of enforcing warranties against IGM.... King Louie has not disentangled what its attorneys did in those two different respects and has made no proof of any allocation as between those two branches of legal services. In the absence of such an allocation, there is no proper basis upon which to make any allowance of attorneys' fees."

*Id.* at 637 (citations omitted). Again, the facts of *King Louie* distinguish it from this case. Here, Rakeys placed in evidence their lawyer's detailed time records and charges for services rendered. From that evidence and from its evaluation of the testimony, i.e., "much of the testimony is applicable to all claims," the trial court concluded that it could make a proper allocation of attorney fees and proceeded to do so. We find no abuse of discretion in that allocation. We deny point IV.[4]

We affirm that part of the judgment that awarded Rakeys the sum of $35,000 in attorney fees against ARI. We reverse and remand that part of the judgment that taxes expert witness fees as costs and direct that such language be stricken from the judgment. If upon remand the trial court awards expert witness fees as a separate item of damages, it shall identify any deposition expenses incurred that are taxable as costs and not include them in the expense award.

PREWITT, P.J., and CROW, J., concur.

---

4. Our resolution of Point I makes it unnecessary that we address Appellants' second and third points relied on.