**BOLIVAR INSULATION COMPANY,**
**Plaintiff,**

v.

**R. LOGSDON BUILDERS, INC., d/b/a R.**
**Logsdon Contracting, Inc., Appellant,**

**and**

**W.M. Kryger Company, d/b/a Carsten**
**Auto Glass, Inc., and Carsten Auto**
**Glass Service, Inc., Respondents.**

Nos. 20089, 20164.

Missouri Court of Appeals,
Southern District,
Division Two.

June 17, 1996.

Rehearing Denied July 8, 1996.

Kendall R. McPhail, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for appellant.

Charles B. Cowherd, Farrington & Curtis, Springfield, for respondents.

PARRISH, Judge.

This appeal arose from litigation over construction of a commercial building. R. Logsdon Contracting, Inc., (Logsdon) appeals the amount of interest, rate of interest and the amount of attorney's fees it was awarded on Count II of its crossclaim against W.M. Kryger Co., Carsten Auto Glass, Inc., and Carsten Auto Glass Service, Inc., (collectively referred to as "Owner") and the part of the judgment that found for Owner and awarded damages on Count I of Owner's crossclaim against Logsdon. This court reverses the amount of interest awarded Logsdon on Count II of its crossclaim and the rate of interest allowed; reverses the award in favor of Owner on Count I of Owner's crossclaim against Logsdon and remands with directions as to those claims. The judgment is affirmed in all other respects.

Logsdon entered into a contract with Owner in which Logsdon agreed to construct a commercial building for Owner to use in its automobile glass business. Construction of the building was begun in late spring 1989. It was completed at the end of December 1989, or during the first part of January

1990. Owner took possession of the building during December 1989.

Logsdon obtained the services of a subcontractor, King Electric Co., Inc., (King) for part of the work required by the construction contract. In addition to performing work pursuant to its subcontract agreement with Logsdon, King performed work on the building directly for and at the request of Owner. Disputes arose between Logsdon and Owner and between King and Owner concerning amounts Owner owed for the work done by the contractors.

While the construction was in progress, Owner requested various changes and additions to the work required by the building plans. At the time Owner requested the first change, Logsdon and Owner agreed that Logsdon would maintain a record of additional work required by reason of Owner's changes and additions. Logsdon was to submit one payment request for that work when the project was completed. When the project was completed, Logsdon provided Owner with a "list of extras" for the additional work.

Owner responded by preparing its own list. Owner's list included a review of items submitted by Logsdon and various credits Owner claimed it was entitled to receive from Logsdon. Logsdon then prepared a revised list and submitted a request for payment. The request for payment was prepared on the same form Logsdon used to request periodic payments throughout the course of construction. Owner made no payment for the extras Logsdon submitted.

Logsdon thereafter filed a statement of mechanic's lien on the property where the building was located, followed by an action to enforce the lien. *See* §§ 429.080 [1] and 429.170. Logsdon's action against Owner included two additional counts, one for breach of contract and one in *quantum meruit.* It was consolidated with a suit to enforce a mechanic's lien that a material supplier, Bolivar Insulation Co. (Bolivar Insulation), had previously filed. *See* § 429.280.

After Logsdon's action had been consolidated with the one brought by Bolivar Insulation, King filed suit against Owner contending Owner had failed to pay King for work done in addition to what its contract with Logsdon required. King alleged that the work for which it sought payment had been performed specifically at Owner's request. King's action was consolidated with those of Bolivar Insulation and Logsdon.

Bolivar Insulation dismissed the action it brought against Owner prior to trial. Trial proceeded on Logsdon's and King's claims against Owner and on a crossclaim Owner filed against Logsdon. The trial court entered judgment as follows:

| | |
|---|---|
| King's claim against Owner | Judgment for King in the amount of $3,184.71 with prejudgment interest in the amount of $1,270.96 representing interest from May 14, 1990, at the rate of 9% per annum |
| Logsdon's claims against Owner | Count I -- Judgment for Owner |
| | Count II -- Judgment for Logsdon in the amount of $21,097 plus prejudgment interest on $11,187 of that amount at the rate of 9% per annum from January 5, 1990; interest on judgment at the rate of 9% per annum after November 7, 1994; attorney fees of $5,000 |
| | Count III -- Judgment for Owner |
| Owner's claims against Logsdon | Count I -- Judgment for Owner in the amount of $1,396.72 with prejudgment interest in the amount of $557.20 representing interest from May 14, 1990, at the rate of 9% per annum |
| | Count II -- Judgment for Logsdon |

Logsdon's appeal is directed to (1) the amount of interest the trial court awarded on damages allowed Logsdon in the judgment rendered in its favor on Count II of its claim against Owner; (2) the amount of attorney's fees the trial court awarded Logsdon on its

---

1. References to statutes are to RSMo 1986 unless otherwise stated.

claim against Owner; and (3) the award of damages to Owner on its claim against Logsdon.

### The Trial

The trial that produced the judgment from which Logsdon appeals took five days to complete and was interrupted by lengthy continuances. It commenced February 24, 1994. Opening statements and testimony from two witnesses were heard that day. Trial was to resume February 25; however, the witness whose testimony had been interrupted by the overnight adjournment was ill and could not appear. The trial court continued the case. Trial was scheduled to resume on May 26. On May 20 the trial court granted a motion for continuance. It rescheduled the remainder of the trial for July 28 and 29.

Trial resumed July 28 and 29 but was not completed. It resumed August 25, then was adjourned to September 2. Trial was completed that date and the case taken under submission.

Logsdon presents six claims of trial court error in its appeal. Points I, II and IV are directed to the amount of prejudgment interest the trial court awarded Logsdon on Count II of its crossclaim against Owner. Point III is directed to the trial court's limitation of postjudgment interest to 9% rather than a contract rate of 18% per annum. Point V contends the trial court erred in limiting the amount of attorney's fees awarded Logsdon to $5,000. Point VI is directed to the part of the judgment that found in favor of Owner on Count I of its crossclaim against Logsdon.

### Prejudgment Interest

After the trial court entered judgment in this case, Owner filed a motion for new trial and an alternative motion to amend the judgment. The trial court granted the alternative motion and filed an "Amended Judgment." The amended judgment included the findings:

With respect to Count II of the Crossclaim of [Logsdon] against [Owner], the Court entered judgment in favor of [Logsdon] against [Owner] for the sum of Nineteen Thousand Seven Hundred Dollars ($19,700.00), together with prejudgment interest thereon at the rate of Nine Percent (9%) per annum from and after January 5, 1990, being the sum of Eight Thousand Five Hundred Eighty–Four and 02/100 Dollars ($8,584.02) as and for prejudgment interest, with post-judgment interest at the rate of Nine Percent (9%) per annum from and after November 7, 1994, . . . . The Court awarded prejudgment interest at the rate of Nine Percent (9%) per annum rather than the rate of Eighteen Percent (18%) per annum as set forth in the contract admitted into evidence on the basis of the Court's finding that approximately one-half (1/2) of the amount claimed in this Crossclaim was offered prior to the filing of this litigation.

The trial court directed:

The judgment in favor of [Logsdon] on Count II of its Crossclaim against [Owner] is increased to the sum of Twenty–One Thousand Ninety–Seven Dollars ($21,-097.00), together with prejudgment interest at the rate of Nine Percent (9%) per annum from January 5, 1990 through November 7, 1994 on Eleven Thousand One Hundred Eighty–Seven Dollars ($11,-187.00) of said amount, being the total sum of Four Thousand Eight Hundred Seventy–Four and 64/100 Dollars ($4,874.64) as and for prejudgment interest, . . . . Prejudgment interest is limited to Nine Percent (9%) per annum on Eleven Thousand One Hundred Eighty–Seven Dollars ($11,-187.00) rather than Nine Percent (9%) on the entire amount awarded under Count II of this Crossclaim for the reason that the sum of Eleven Thousand One Hundred Eighty–Seven Dollars ($11,187.00) is the liquidated portion of the entire amount awarded and the balance is found by the Court to be unliquidated. Prejudgment interest is limited to the rate of Nine Percent (9%) per annum rather than the amount of Eighteen Percent (18%) per annum for the reasons that the amount awarded is not the result of unpaid invoices as required under the terms of the contract placed in evidence and the length of time between the filing of this case and trial.

Logsdon's work for Owner was done pursuant to a contract dated April 7, 1989. The contract consists of two pages, the first of which is a statement of transmittal by Logsdon that references certain architect drawings and specifications "to be provided by Bill Derington, architect, revised and dated April 7, 1989."

The second page of the contract states the price for the work that was to be performed. It includes the following payment terms:

Our standard terms of payment ate [sic] 30 day pay requests, payable by the 5th of each month for all work and/or materials on the job site, with the exception of the metal building for which payment is due upon delivery to the job site.

Owner hereby agrees to pay 1 1/2% interest charges per month on all accounts not paid within 30 days of the invoice date. This is an annual percentage rate of 18%. Should suit be commenced or an attorney employed as a result of the breach of any provision of this contract by the owner, owner shall pay all costs, charges and expense incurred including the fee of an attorney.

For changes in the work and any additions to the contract, the owner agrees to reimburse the contractor for the cost of the work and a fee of 15%.

Point IV contends that Logsdon's claim for changes and extras was a liquidated claim; that the trial court's determination that only part of the claim was liquidated was error; that the allowance of interest at the rate of 9% per annum on that part of Logsdon's award against Owner rather than 18% on the total award of $21,097 in Count II was error.

■ Section 408.020 provides that creditors shall receive interest "for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." If parties have not agreed to a rate of interest, "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum." *Id.* The nine percent statutory rate is applicable only if the parties have no separate agreement with respect to the allowable rate of interest. *Estate of Bruce v.*

*Bruce,* 767 S.W.2d 598, 601 (Mo.App.1989). Here, the contract between the parties provided for "all accounts not paid within 30 days" of the invoice date to bear interest at the rate of 18% per annum.

■ As the trial court suggested in its findings, the general rule is "in the absence of an agreement to the contrary, interest is not recoverable on an unliquidated demand." *Burger v. Wood,* 446 S.W.2d 436, 443 (Mo. App.1969). The trial court concluded that since the amount due Logsdon for extras and changes from the original construction plans was not identified until after trial, only the amount Owner had stated it owed prior to trial, i.e., $11,187.00, was liquidated. The trial court allowed prejudgment interest only on that amount and only at the rate of 9% per annum. Logsdon, by its Point IV, contends the ascertainment that not all the amount owed was a liquidated claim was error.

■ "In order to be liquidated so to allow interest, the claim must be fixed and determined or readily determinable, but it is sufficient if it is ascertainable by computation." *Schnucks Markets, Inc. v. Cassilly,* 724 S.W.2d 664, 668 (Mo.App.1987). Further, the fact that Owner interposed a cross-claim against Logsdon with respect to the amount owed did not render Logsdon's claim unliquidated so as to preclude collection by Logsdon of prejudgment interest. *Killian Const. Co. v. Tri–City Const. Co.,* 693 S.W.2d 819, 829 (Mo.App.1985).

Logsdon's contract with Owner provides for Logsdon to be reimbursed for the cost of work required because of changes from the architectural plans and specifications and for "any additions to the contract" and "a fee of 15%." The amount due was readily ascertainable by computation. Logsdon's Point IV is well-taken. Logsdon is entitled to prejudgment interest on the entire amount of the judgment attributable to extras and changes to the plans and specifications.

■ The rate of interest is specified in the contract. The contract states that Owner is to pay interest at the rate of 18% per annum on accounts not paid within 30 days of invoice dates.

Logsdon submitted a request for payment for extras and changes, after considerable discussion with owner, on an American Institute of Architecture (AIA) form, the same procedure that was used in requesting payments for the work that was done pursuant to the construction contract. The request sought payment in the amount of $26,611.56. Owner disputed the amount owed.

The trial court, in finding for Logsdon on Count II of Logsdon's claim against Owner, held that Owner owed Logsdon $21,097 for changes and extras pursuant to the terms of the contract between the parties. It found that interest was owed on the amount of the award it concluded was "liquidated" from January 5, 1990, the date of Logsdon's request for payment. January 5, 1990, was the "invoice date."

Logsdon is entitled to prejudgment interest from January 5, 1990, to the date of judgment at the rate of 18% per annum on $21,097. The judgment as to Count II of Logsdon's claim against Owner must be reversed with respect to the award of prejudgment interest, and the case remanded to the trial court with directions to award prejudgment interest on that claim as aforesaid.

Points I and II are likewise directed to the trial court's limitation of prejudgment interest to 9% rather than the 18% rate specified in the contract for "accounts not paid within 30 days of the invoice date." Having concluded in the resolution of Point IV that Logsdon is entitled to prejudgment interest at the contract rate of 18% per annum, Points I and II are moot.

### Postjudgment Interest

■ Point III asserts the trial court erred in failing to award interest, both prejudgment and postjudgment, at the rate of 18% per annum. Having resolved this issue with respect to prejudgment interest, the question that remains is whether the trial court erred in imposing interest on the judgment at the rate of 9% per annum. Logsdon contends the trial court incorrectly applied the law; that § 408.020 and § 408.040, RSMo 1994, provide for the rate of interest on damages awarded on Count II of Logsdon's crossclaim

to be the rate prescribed by the contract between Logsdon and Owner.

Section 408.040.1, RSMo 1994, states:

Interest shall be allowed on all money due upon any judgment or order of any court from the day of rendering the same until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid.

The damages awarded Logsdon on Count II of its claim against Owner were based on Owner's breach of contract. The contract provides for interest on delinquent payments at the rate of 18%. The judgment should bear interest at that rate. *See Green Acres Enterprises, Inc. v. Freeman,* 876 S.W.2d 636, 641 (Mo.App.1994); *Energy Masters Corp. v. Fulson,* 839 S.W.2d 665, 670 (Mo. App.1992); *Boatmen's First National Bank of Kansas City v. Bogina Petroleum Engineers,* 794 S.W.2d 703, 705 (Mo.App.1990). The part of the judgment providing for interest on Logsdon's damages from Owner must be reversed and the case remanded with directions that the trial court order the part of the judgment in favor of Logsdon on Count II of its claim against Owner to bear interest at the rate of 18% per annum.

### Attorney's Fees

■ Point V contends the trial court erred in limiting attorney's fees and expenses awarded Logsdon to the sum of $5,000. Logsdon argues the award of that amount was arbitrary and an abuse of discretion by the trial court. Logsdon points to explanations given by the trial court for limiting the amount of attorney's fees claiming they "were not supported by substantial evidence and constituted a misapplication of the law in that the contract clearly contemplated all fees and expenses sought by defendant Logsdon, and [Owner] never offered any payment to defendant Logsdon."

The trial judge advised the parties that it was clear "a good part" of the time Logs-

don's attorneys spent representing Logsdon was related to defending Owner's claim against Logsdon in which Owner contended Logsdon's workmanship was faulty and that Logsdon had used faulty materials in the construction. The trial judge also stated that since Owner believed some payments were due Logsdon, the litigation over changes and extras was "over approximately $16,000.00 . . . at the outset."

Principles applicable to awarding attorney's fees pursuant to contractual provisions were reviewed in considerable detail in *Architectural Resources, Inc. v. Rakey,* 912 S.W.2d 676 (Mo.App.1995). There, as in this case, a contract that was the basis of the lawsuit permitted a party who successfully filed and pursued a lawsuit for breach of contract to recover attorney's fees from the breaching party. The court explained that trial courts are experts with respect to determining questions relating to attorney's fees; that evidence or opinion as to the value of attorney's fees are not required. *Id.* at 681. Relying on *Roberts v. McNary,* 636 S.W.2d 332, 338 (Mo. banc 1982), the court held that a trial court's award of attorney's fees, being within its sound discretion, should not be reversed unless the amount was arbitrarily arrived at or was so unreasonable as to indicate indifference and lack of proper judicial consideration.

In *Architectural Resources,* as in this case, multiple claims were tried, not all of which were based on the contract that provided for recovery of attorney's fees for its breach. The trial court in *Architectural Resources* awarded attorney's fees only for pursuit of the claim based on breach of that contract. On appeal, the court held that the trial court did not abuse its discretion in allocating the "combined attorney fees" so that only those attributable to the contract action were awarded the wronged party. 912 S.W.2d at 681.

In this case the trial court had documentation before it concerning Logsdon's attorney's fees. This court does not find the fees that were awarded were determined arbitrarily nor that they were so unreasonable as to indicate indifference or lack of proper judicial consideration. Point V is denied.

However, this case is being remanded to the trial court. Issues remain that require further action by that court. Should the trial court determine, consistent with its review of the issues addressed in this appeal, that additional attorney's fees should be awarded, it may, in the exercise of its sound discretion, so order.

### Owner's Claim Against Logsdon

■ Owner's crossclaim against Logsdon included Count I for breach of contract and Count II for slander of title. Count I alleged that Logsdon failed to construct the building that is the subject of the contract in accordance with applicable plans and specifications and failed to do the work in a workmanlike manner. Count II was a claim that Logsdon's filing of a mechanic's lien constituted slander of title to Owner's property.

Initially the trial court found for Logsdon on both counts of Owner's crossclaim. Later, when the trial court amended its judgment, it found for Owner on Count I and assessed Owner's damages at $1,396.72. The trial court stated to the parties that this amounted to part of King's claim against Owner; that it was intended to reimburse Owner for part of the damages awarded to King—King had obtained damages on its crossclaim against Owner for $3,184.71 plus interest.

■ Point VI contends the trial court erred in awarding damages to Owner against Logsdon because "no issue or theory of indemnity was pleaded by [Owner] nor were [Owner's] pleadings amended in any respect prior to or during the course of trial to plead such theory or issue of indemnity."

Generally, where the ruling of the trial court is correct, the reason is immaterial. *Boswell v. American Ins. Co.,* 835 S.W.2d 454, 460 (Mo.App.1992). That rule, however, is tempered by the judgment being "correct upon any legal theory consistent with the pleadings." *Morris v. Western Casualty and Surety Co.,* 421 S.W.2d 19, 21 (Mo.App.1967), The trial court's authority is limited to such questions as are presented by the parties in their pleadings. *UT Communications [Credit Corp. v. Resort Dev.],* 861 S.W.2d [699] at 707

[ (Mo.App.1993) ]; *Buchanan v. Mitchell,* 785 S.W.2d 317, 318 (Mo.App.1990).

*Cottonhill Investment Co. v. Boatmen's National Bank of Cape Girardeau,* 887 S.W.2d 742, 743 (Mo.App.1994)(footnote omitted).

Owner's pleadings made no claim for indemnification nor were they amended during trial to assert such a claim. The trial court had no authority to find for Owner against Logsdon on that basis. The part of the judgment finding for Owner on Count I of Owner's crossclaim against Logsdon will be reversed. On remand the trial court is directed to enter judgment, as was initially done, in favor of Logsdon on Count I of the crossclaim.

### Dispositions

The amount and rate of prejudgment interest awarded Logsdon on Count II of its crossclaim against Owner is reversed. The award of postjudgment interest at the rate of 9% per annum on damages awarded Logsdon on Count II of its crossclaim against Owner for breach of contract is reversed. The trial court is directed to award prejudgment interest at the rate of 18% per annum and to award postjudgment interest on damages on Count II of Logsdon's crossclaim at the contract rate of 18% per annum.

The award of damages and judgment in favor of Owner and against Logsdon on Count I of Owner's crossclaim against Logsdon is reversed. The trial court is directed to enter judgment for Logsdon on Count I of Owner's crossclaim.

The case is remanded to the trial court for further proceedings consistent with this opinion as to Count II of Logsdon's crossclaim against Owner and Count I of Owner's crossclaim against Logsdon. In all other respects the judgment is affirmed.

SHRUM, C.J., and CROW, J., concur.