ARCHITECTURAL RESOURCES, INC., Plaintiff–Appellant,

v.

Donald J. RAKEY and Shirley J. Rakey, Defendants–Third–Party Plaintiffs– Respondents,

v.

John A. COOPER and J.C.A. Architects, Inc., Third–Party Defendants– Appellants.

No. 21385.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 25, 1997.

John E. Curran, Julie J. McNitt, Curran & Clifford, Osage Beach, for Plaintiff–Appellant.

Thomas E. Loraine, Roger M. Gibbons, Thomas E. Loraine, P.C., Osage Beach, for Plaintiffs–Respondents.

SHRUM, Judge.

Architectural Resources, Inc. (ARI) and J.C.A. Architects, Inc. (JCA)[1] complain on appeal that the trial court erred in its award of interest on the underlying judgment. Specifically, they assert that all judgment interest should commence with the "final judgment" entered on October 31, 1996, rather than starting interest on part of the judgment as of December 5, 1994. This court disagrees. We affirm the judgment.

In *Architectural Resources, Inc. v. Rakey,* 912 S.W.2d 676 (Mo.App.1995) ("*Rakey I*") this court affirmed part of the original judgment that awarded Respondents $35,000 in attorney fees. *Id.* at 682. We found, however, that the trial court "lacked authority to assess expert witness fees as court costs ... [and ordered] that portion of the judgment ... set aside." *Id.* at 679[5]. We remanded to the trial court "for it to consider whether a separate award of such fees and expenses is warranted and, if so, how much and against whom." *Id.* at 680.[2]

---

1. Collectively, we refer to ARI and JCA as "Appellants." Although John A. Cooper is named as an appellant in the caption of the notice of appeal, the claims of trial court error affect only Appellants, not Cooper.

2. The trial court in its original judgment awarded Respondents $30,000 in damages. Appellants mounted no challenge to that part of the judgment. Accordingly, $65,000 was the liquidated component of the original judgment after our decision in *Rakey I.*

Upon remand, the trial court made a docket entry that directed the clerk to "release" to Respondents $65,000 of the "appeal bond." The docket entry included this provision: "The Deft does not waive his claim to interest does not Pl forego his rt. to deny that interest is due." On April 5, 1996, Respondents received $65,000 from the supersedeas bond previously posted by Appellants.

On April 23, 1996, the trial court entered an order stating that she would not hear "any ... evidence as to expert witness fees." Respondents were ordered to "glean from the transcript a summary of expert witness fees" and present such summary "to the Court and opposing counsel by a date ... agreed to by the parties." Continuing, this order recited that "[t]he case will then be set for argument of counsel only."

On October 30, 1996, the trial court conducted a hearing "on [the] limited issues of expert witness fees, deposition costs, additional atty fees, and interest on the judgment." Respondents presented to the trial court a document captioned "Rakey Exhibit 1–Remand Hearing." Respondents included in this exhibit requests for judgment interest in the amounts of $7,805.34 and $400.32. The $7,805.34 figure represented interest at 9% on $65,000 for the period December 5, 1994 (date of original judgment) to April 5, 1996 (date Respondents received $65,000). The $400.32 sum represented interest at 9% on $7,805.34 from April 5, 1996, to October 30, 1996.

On October 31, 1996, the trial court entered a "Judgment and Amendment to Judgment Entered December 5, 1994." As part of this judgment, the trial court awarded Respondents interest on the $65,000 from December 5, 1994, to April 5, 1996, i.e., $7,805.34, and awarded them interest at 9% on the $7,805.34 from April 5, 1996, until paid in full. This appeal followed.

Appellants' single point on appeal maintains that the trial court erred when it found them liable for interest beginning December 5, 1994, on the $65,000 component of the judgment. They argue that no final judgment existed until the trial court determined whether additional damages were warranted in the form of expert witness fees. Appellants insist that until the trial court decided the expert fee issues, the total judgment sum was "unascertainable and unliquidated[;]" consequently, interest on the judgment should not begin to accrue until the trial court decided those issues on October 31, 1996. We disagree.

"As a general rule, if a money judgment appealed from is affirmed by an appellate court, interest is allowed from the date the original judgment was entered in the trial court." *In Re Thomasson's Estate*, 192 S.W.2d 867, 870[3] (Mo.1946). Section 408.040.1, RSMo 1994, provides, in part: "Interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made...." The Missouri Supreme Court has observed that the rule quoted above and the statute are "consonant with justice." *Thomasson's Estate*, 192 S.W.2d at 870. "'It is almost an axiom in American jurisprudence that he who has the use of another's money, or money he ought to pay, should pay interest on it.'" *Laughlin v. Boatmen's Nat. Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974, 979 (1945) quoting 1 Sutherland, Damages, § 324, p. 1016.

The plaintiff in the *Laughlin* cases was administratrix of the estate of a deceased lawyer. *Boatmen's* was executor of the estate of Hugh Thomasson. Count I of the plaintiff's petition was for "legal services in defending Thomasson in a lunacy proceeding." *Laughlin*, 189 S.W.2d at 976 ("*Laughlin II*"). The plaintiff's second count was for "advancements to Thomasson and count three for his funeral expenses...." *Id.* When first tried on November 2, 1939, a jury returned a verdict favorable to the plaintiff on all counts. *Boatmen's* appealed, whereon our supreme court affirmed the judgment on Counts II and III but reversed and remanded as to Count I for legal services. *See Laughlin v. Boatmen's Nat. Bank of St. Louis*, 163 S.W.2d 761, 766 (Mo.1942) ("*Laughlin I*"). Upon remand and retrial, a jury again returned a verdict for the plaintiff on Count I. When the trial court entered judgment on Count I per the new jury verdict, it also entered judgment on Counts II and III as of November 2, 1939, the date of

the verdict on those counts. *Boatmen's* again appealed. As one of its points, *Boatmen's* argued that the trial court erred in entering judgment on Counts II and III as of November 2, 1939. *Boatmen's* contended that "the judgment may bear interest only from the date of the final judgment on all three counts or after the case has been finally and completely disposed of." *Laughlin II,* 189 S.W.2d at 980. The *Laughlin II* court rejected that argument with this explanation:

"We think it unnecessary to decide whether and when, under the circumstances, the court could enter a final judgment on all counts. Here whatever the mandate may have said and regardless of when final judgment could be entered on all counts, the verdicts as to counts two and three were affirmed by our former opinion and so far as the interest-judgment statute is concerned the determination of those two counts was final and within the plain wording of the statute: 'Interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made by payment, * * *.' Mo.R.S.A. § 3228. If [*Boatmen's*] had desired to stop the running of interest on those two counts it could have done so. The judgment bears interest by reason of the statute and it is not necessary that it or the mandate recite the fact. The judgment was reversed and remanded for a new trial as to count one for legal services but it was affirmed as to counts two and three as to advancements and funeral expenses and the latter counts bear interest, by virtue of the statute, as of the date of their original rendition." (citations omitted).

*Id.* at 980[21,22].

▮ Except for the rate, the present statute on judgment interest, § 408.040.1, RSMo 1994 is identical to § 3228, RSMo 1939 quoted in *Laughlin II.* Relying on *Laughlin II,* we hold that Respondents were entitled to interest on the $65,000 component of the judgment as a matter of statutory right from the date of its original entry in the trial

court. We find the trial court did not misapply the law when it entered judgment for those interest sums.

In reaching this conclusion, we do not ignore the case authorities cited by Appellants, specifically, *Senn v. Commerce–Manchester Bank,* 603 S.W.2d 551 (Mo.banc 1980), *Ohlendorf v. Feinstein,* 670 S.W.2d 930 (Mo.App. 1984), *Herberholt v. DePaul Community Health Ctr.,* 648 S.W.2d 160 (Mo.App.1983), and *Meglio v. Hebel,* 823 S.W.2d 116 (Mo. App.1991). We find, however, that these cases do not support Appellants' position.

*Senn* and *Ohlendorf* discuss and apply the rule that interest accrues from the date of the original entry of judgment if a so-called reversal only modifies the original judgment by adjusting damages up or down. *Ohlendorf, Herberholt,* and *Meglio* examine the rule which says that interest is generally not allowable on unliquidated damages. This rule stems from the fact that the person liable does not know the amount he owes and thus cannot be in default for not paying. However, neither of these principles has application in this case.

The $65,000 component of this judgment was established and became a liquidated sum once the $35,000 attorney fee was affirmed by *Rakey I* and the $30,000 damage award went unchallenged. On remand, modification of the $65,000 component of the judgment was not an option for the trial court. The reversal in *Rakey I* did not affect or alter Appellants' obligation to pay Respondents $65,000. Appellants could have paid the $65,000 component of the judgment early on, obtained a partial satisfaction of judgment, and saved the interest. *See Senn,* 603 S.W.2d at 553. They chose not to do so, and thus must bear the cost of interest accruing on $65,000 from the date of the original entry of judgment.

▮ Respondents file in this court a motion for attorney fees and related costs in connection with this appeal. Such award is authorized by the contract between Respondents and Appellants, and is supported by unchallenged affidavits and detailed itemization of services and expenses.[3] This court

---

3. Appellants filed no counter-affidavits with this court contesting the reasonableness of Respon-

dents' attorney fee request.

may award attorney fees and related costs incurred on appeal. *Ashland Oil, Inc. v. Warmann,* 869 S.W.2d 910, 913 (Mo.App. 1994) citing, *Wooten v. DeMean,* 788 S.W.2d 522, 529 (Mo.App.1990). We exercise this authority with caution, thinking that in most cases the trial court is better equipped to hear evidence and argument, if indicated. *Knopke v. Knopke,* 837 S.W.2d 907, 924[36] (Mo.App.1992).

■ In this case, there do not appear to be any factual issues to be resolved with reference to attorney fees and costs relating to this appeal. We are influenced by the long history of this case and inordinate amount of attorney fees and expenses already incurred. Accordingly in connection with this appeal, we award Respondents $3,500 as attorney fees and $1,084.99 in other related costs, to be included in the trial court's judgment. The costs of this appeal are assessed against Appellants. As amended, and in all other respects, the judgment of the trial court is affirmed.

PARRISH, P.J., and BARNEY, J., concur.