**Richard A. WAISBLUM, Appellant,**

v.

**CITY OF ST. JOSEPH, Missouri, Respondent.**

**No. WD 52055.**

Missouri Court of Appeals,
Western District.

Sept. 10, 1996.

Hugh D. Kranitz, Kranitz & Kranitz, St. Joseph, for appellant.

Kathryn M. O'Brien, Watson & Marshall, Kansas City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

ELLIS, Presiding Judge.

Richard A. Waisblum appeals from a judgment of the Buchanan County Circuit Court granting summary judgment in favor of the City of St. Joseph, Missouri.

Waisblum filed suit against the City of St. Joseph alleging the City negligently failed to maintain its sidewalks, resulting in injury and damages to Waisblum. The City moved for summary judgment on the grounds that Waisblum failed to provide the City with ninety days notice of his intent to sue, as required by § 82.210.[1] The trial court granted the City's motion for summary judgment on those grounds. Waisblum appeals.

In his only point, Waisblum claims the trial court erred in granting the City summary judgment because the notice requirement set forth in § 82.210 applies only to constitutional charter cities that have a population of 100,000 or more. Because St. Joseph is a constitutional charter city with a population of only 71,852, Waisblum argues the notice requirement does not apply to lawsuits filed against the City.

Pursuant to Article VI, § 19 of the Missouri Constitution of 1945, the City of St. Joseph adopted a charter for its own government. The City is, thus, "defined and declared to be a constitutional charter city" § 82.010.1, and "[a]ll laws now existing or

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

which may hereafter be enacted relating or making reference to cities under constitutional charter or constitutional charter cities, shall be deemed to and shall apply" to it. § 82.010.2. Chapter 82 generally relates to constitutional charter cities. In particular, § 82.210 provides:

No action shall be maintained against any city of this state *which now has or may hereafter attain a population of one hundred thousand inhabitants,* on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city.

*Id.* (emphasis added). The record reveals, and the parties mutually concede, that the City of St. Joseph has a population of 71,852.

Notwithstanding the emphasized language of § 82.210, and the acknowledged population of the City, the trial court granted summary judgement in favor of the City, finding that § 82.210 is applicable to the City of St. Joseph and that Waisblum failed to give the required notice.

"Summary judgment is designed to *permit* the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.*

Despite the seemingly clear language of the statute that it is applicable only to cities with a population of 100,000 or more, the City contends that a review of the historical development of the classification of cities in Missouri indicates that the legislature intended that § 82.210 be limited to constitutional charter cities, generally, not just to cities of 100,000 inhabitants.[2] In support of this argument, the City points out that only four Missouri cities meet the population requirement of § 82.210, as currently drafted: Independence, Kansas City, St. Louis, and Springfield. The City suggests that the legislature has failed to eliminate the population requirement due to oversight or because it assumes that all first class cities will eventually reach a population of 100,000.

The City's argument is plausible. As noted previously, prior to 1975, Missouri had four classes of cities: first, second, third and fourth. Historically, there was a statute applicable to each classification, which required that written notice of a claim for personal injury arising out of a defect in certain city property be given to the mayor within a specified number of days of the occurrence. *See* § 73.950, RSMo 1969; § 6454, RSMo 1929; *Cole v. City of St. Joseph,* 50 S.W.2d 623 (Mo.1932); § 75.860, RSMo 1969; § 5724, RSMo 1899; *Jacobs v. City of St. Joseph,* 127 Mo.App. 669, 106 S.W. 1072 (1908); § 77.600; and § 79.480. By 1975, all first or second class cities had chosen to become constitutional charter cities. 1 *Mo. Bar Local Government Law,* § 1.10 (Mo. Bar 2d ed.1986, 1990). Consequently, that same year, the General Assembly repealed all chapters of the Missouri statutes dealing with first and second class cities and eliminated all references thereto. *Id.* At the present, only four notice of claim statutes exist: § 77.600, governing third class cities; § 79.480, governing fourth class cities; § 81.060, governing special charter cities; and § 82.210, governing constitutional charter cities.

---

**2.** The General Assembly originally established four classes of cities: First Class—more than 65,000 inhabitants; Second Class—more than 27,500, but less than 100,000 inhabitants; Third Class—more than 3,000 inhabitants; and Fourth Class—more than 500 inhabitants, but less than 3,000 inhabitants. Special towns were those with less than 500 inhabitants and unincorporated villages contained more than 200 inhabitants. 1 *Mo. Bar Local Government Law,* § 1.10 (Mo. Bar 2d ed.1986, 1990).

The City suggests that the General Assembly inadvertently retained the population requirement in § 82.210 when it repealed the statutes relating to first and second class cities, in 1975. In *Kieffer v. City of Berkeley,* 508 S.W.2d 295 (Mo.App. E.D.1974), the Eastern District of this court commented on the historical basis for the population requirement contained in § 82.210. The Court stated:

> Although [§ 82.210] appears in the chapter with regard to constitutional charter cites, by its terms it applies to cities containing a population of at least 100,000 inhabitants.... This population requirement set forth in the statute was no doubt included because Article IX, Section 16, Constitution of 1875, which was in effect when § 82.210 was enacted in 1913, authorized adoption of a charter form of government in cities having a population of more than 100,000 inhabitants. By Article VI, Section 19, Constitution of 1945, V.A.M.S., this requirement was reduced to 10,000; and later, by amendment adopted October 5, 1971, to 5,000, but the statute was never changed.

*Id.* at 296.

In accordance with the *Kieffer* court's analysis, the City asserts that the true intendment of the legislature, when it repealed the statutes relating to first and second class cities, was to eliminate the population requirement of § 82.210 so the notice requirement applies to all constitutional charter cities. As observed earlier, the City's argument is not without merit. However, the General Assembly has not seen fit to delete the language and, as pointed out in *Kieffer,* the constitutional population requirement for constitutional charter cities changed to 10,000 with the adoption of the 1945 Constitution. Thus, the General Assembly has had 51 years in which to delete or change the population language in the statute, but has chosen not to do so. Contrary to the City's argument, the fact that the General Assembly, in all those years, never removed the population requirement denotes an intent by the legislature that it remain a part of the statute.

Regardless of the legislative reasoning for maintaining the population requirement, "the General Assembly is presumed to have intended exactly what it states directly and unambiguously." *DePoortere v. Commercial Credit Corp.,* 500 S.W.2d 724, 727 (Mo.App. S.D.1973). We lack authority to read into a statute a legislative intent contrary to the intent made evident by the plain language of the statute. *Kearney Special Rd. Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993). Further, we are obligated to give each word, clause, sentence and section of the statute meaning. *Hadlock v. Director of Revenue,* 860 S.W.2d 335, 337 (Mo. banc 1993).

When statutory language is clear, unambiguous and admits of only one meaning, there is no room for construction. *Missouri Hosp. Ass'n v. Air Conservation Comm'n,* 874 S.W.2d 380, 392 (Mo.App. W.D.1994). The language of § 82.210 is plain and unambiguous. As such, we cannot disregard the population requirement, as the City would have us do. The notice requirement contained in § 82.210, by its own terms, applies only to constitutional charter cities with populations of 100,000 or more. *Gates v. City of Springfield,* 744 S.W.2d 487, 489 (Mo.App. S.D.1988); *Kieffer,* 508 S.W.2d at 296; *Kling v. Kansas City,* 227 Mo.App. 1248, 61 S.W.2d 411, 412 (1933). Since the City of St. Joseph has fewer than 100,000 inhabitants, § 82.210 does not apply to it and Mr. Waisblum was not required to give the City notice of the occurrence he alleged caused him injury. Thus, the trial court erred in granting summary judgment in favor of the City.

The judgment is reversed and the cause remanded to the trial court for further proceedings.

All concur.