STATE of Missouri ex rel., Brandon LASZEWSKI, Plaintiff/Appellant/Respondent,

v.

R.L. PERSONS CONSTRUCTION, INC., and United Fidelity and Guarantee Company, Defendants/Respondents/Cross–Appellants,

R.L. Persons Construction, Inc., Third–Party Plaintiff,

v.

Gaylon Griffin, d/b/a Griffin Electric, Third–Party Defendant.

Nos. 25592, 25594.

Missouri Court of Appeals, Southern District, Division One.

June 23, 2004.

John M. Albright, Moore & Walsh, L.L.P., Poplar Bluff, for appellant.

Elizabeth A. Blaich, Edmundson, Summers, Hopkins and Edmundson, for respondent/cross-appellants, R.L. Persons Construction, Inc., and United Fidelity and Guarantee Company.

NANCY STEFFEN RAHMEYER, Chief Judge.

This case presents an action by a laborer for unpaid wages brought against a general contractor and a surety for work performed on two public works construction projects. Both Appellant, Brandon Laszewski ("Laszewski"), and Respondents, R.L. Persons Construction, Inc. ("RLP") and United States Fidelity and Guarantee Company ("USF & G"), appeal from the trial court's judgment awarding $40,282.73 to Laszewski.[1]

In reviewing a court-tried case, we must affirm the trial court's judgment unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case. *Wallace v. Van Pelt*, 969

---

1. Appellant Laszewski is actually the Cross–Appellant in this matter; however, pursuant to Rule 84.04(j) he has been designated as the Appellant.
References to Rules are to Missouri Court Rules (2003) unless otherwise indicated.

2. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form, in Rule 84.13(d).

S.W.2d 380, 382 (Mo.App. W.D.1998). We view the evidence in the light most favorable to the judgment. *Searcy v. Seedorff,* 8 S.W.3d 113, 116 (Mo. banc 1999). The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe all, part, or none of the testimony of any witness. *Harris v. Desisto,* 932 S.W.2d 435, 443 (Mo.App. W.D.1996).

The record reveals that RLP, a general construction contractor, was awarded two public works contracts in 1998 and 1999. The first project was for the construction of the Blanchard Elementary School in Cape Girardeau, Missouri, ("the Cape project"), and the second project was for the construction of the New Madrid Juvenile Center in New Madrid, Missouri (the New Madrid project) (collectively, "the public works projects"). In 1999, RLP also accepted a non-public works contract with American Superstores to construct a commercial building in Poplar Bluff, Missouri ("the Poplar Bluff project"). RLP enlisted USF & G as a surety and USF & G issued payment and performance bonds to cover RLP on the public works projects.[3] As both the Cape project and the New Madrid project met the definitions of Missouri's Prevailing Wage Act ("the Act") as "new construction by a public body," RLP was required by Section 290.230 to pay

"[n]ot less than the prevailing hourly rate of wages for work of a similar character in the locality."[4]

On June 29, 1998, RLP and Griffin Electric ("Griffin"), a business owned by Gaylon Griffin, entered into a subcontract agreement wherein Griffin subcontracted to perform electrical work on the Cape project by providing labor and materials in exchange for a quoted contract price of $328,687.00. Later, Griffin also agreed to perform electrical work for RLP on both the New Madrid Project and the Poplar Bluff project.

Laszewski, who was not a licensed electrician, worked intermittently for Griffin between 1996 and 1999. Though on previous occasions, and on the Poplar Bluff project, Griffin had paid him $8.00 per hour, Laszewski was paid $12.70 per hour for his work on the public works projects. The prevailing wage for an electrician on the particular public works projects at issue was $36.55 per hour.

■ On July 12, 2001, the Division of Labor Standards notified Laszewski that, after investigating a complaint filed with their office, they believed that Laszewski had been underpaid for the work he did on the two public works projects for RLP and Griffin.[5] Laszewski brought suit under Section 290.300 against both RLP, the

---

**3.** Section 8.683 states in pertinent part:

All successful bidders shall provide payment and performance bonds to the public owner.

All statutory references are to RSMo 2000, unless otherwise specified.

**4.** Missouri's Prevailing Wage Act, Sections 290.210 through 290.340, was enacted by the Missouri General Assembly in 1957. *City of Kennett v. Labor & Indus. Relations Comm'n,* 610 S.W.2d 623, 625 (Mo. banc 1981). Although Missouri courts have not specifically discussed the purpose behind the Prevailing Wage Act, the law appears to be based on, and has a similar purpose to, the federal

Davis–Bacon Act, 40 USCA Section 276a et seq., which is designed to ensure that workers on public projects be paid reasonable wages. *Henry County Water Co. v. McLucas,* 21 S.W.3d 179, 181 (Mo.App. W.D.2000), overruled on other grounds by *Div. of Labor Standards v. Friends of the Zoo of Springfield, Mo., Inc.,* 38 S.W.3d 421, 422–23 (Mo. banc 2001).

**5.** The Missouri Division of Labor Standards is a subsection of the Department of Industrial Relations. The division has the jurisdiction to investigate complaints of alleged non-payment and under-payment of wages on public works projects. *See* Section 290.240.

prime contractor on the projects, and USF & G, as the surety, alleging that he had been underpaid and should have received $36.55 per hour, the prevailing wage for an electrician on those projects.[6] RLP then filed a third-party petition against the subcontractor, Griffin.

Following a bench-trial, the trial court found in favor of Laszewski. In its detailed "Findings of Fact and Conclusions of Law and Judgment," the trial court stated that Laszewski's work from July of 1999 through October of 1999 on the public works projects amounted to "electrical indoor work" under the Act; therefore, he was entitled to be paid the stated prevailing wage of $36.55 per hour, as opposed to the $12.70 or $12.75 per hour that he actually received. As Laszewski was paid a total of $7,513.45 for his services when he should have received $21,654.50, the total unpaid prevailing wages owed to Laszewski were $14,051.05. Further, he was entitled to double the unpaid wages under Section 290.300 or an amount of $28,102.10. The trial court also awarded Laszewski reasonable attorney fees in the amount of $3,750.00 for thirty hours of his counsel's services.

Thereafter, the trial court entered judgment in favor of Laszewski and against RLP in the amount of $40,282.73.[7] Additionally, the trial court found that RLP was entitled to recover the full amount of the judgment from Griffin and entered an order against Griffin for $40,282.73. These appeals by RLP,[8] USF & G, and Laszewski followed.

Respondents bring three points on appeal. First, Respondents assert that the trial court's finding that it was "unnecessary" to determine Laszewski's "employment status" impermissibly broadens the plain language of the Prevailing Wage Act. Specifically, Respondents allege that prevailing wages are required to be paid to workmen "employed" on a public works project, and not to independent contractors such as Laszewski. Respondents argue that Laszewski must be an employee to be subject to the prevailing wage act but the evidence supports an inference that Laszewski was an independent contractor and not an employee. Respondents argue that to hold otherwise violates the due process rights of the general contractors, as well as the subcontractors. Second, Respondents state that the trial court erred in awarding $28,102.10 in unpaid prevailing wages to Laszewski because there was no evidence of his actual dates of employment and the trial court used impermissible inferences to ascertain the dates of employment from cancelled

---

6. Section 290.300 states:

   Any workman employed by the contractor or by any subcontractor under the contractor who shall be paid for his services in a sum less than the stipulated rates for work done under the contract, shall have a right of action for double whatever difference there may be between the amount so paid and the rates provided by the contract together with a reasonable attorney's fee to be determined by the court, and an action brought to recover same shall be deemed to be a suit for wages, and any and all judgments entered therein shall have the same force and effect as other judgments for wages.

   Further, if a subcontractor failed to pay plaintiff the prevailing wage as required by law, the prime contractor and its surety are liable for the unpaid wages plus attorney's fees. *Board v. Eurostyle*, 998 S.W.2d 810, 813 (Mo. App. S.D.1999).

7. This award consisted of the following: (1) $14,051.05 for unpaid wages; (2) $14,051.05 in accordance with the statutory doubling penalty contained in Section 290.300; (3) pre-judgment interest of $8,219.86; and, (4) statutory attorney fees of $3,750.00.

8. RLP and USF & G filed a joint brief on appeal. For ease of discussion of the argument, we will refer to both as "Respondents."

checks. Third, Respondents argue that Laszewski's claim was governed by either the one-year statute of limitations applicable to penal laws in Section 516.380 or the two-year statute of limitations as set forth in Section 290.527, and therefore, was not timely filed.

Laszewski also alleges three points of trial court error. First, he asserts that the trial court erred in entering the judgment which included an award of attorney fees and in denying his motion to reopen the evidence. He asserts that he is entitled by statute to reasonable attorney fees and, even though his request for a hearing was not made until after the close of evidence, the trial court erred in not granting him a hearing on attorney fees. Second, Laszewski alleges the trial court erred in refusing to accept his previous deposition testimony as an offer of proof. Lastly, he argues that the trial court's exclusion of his deposition testimony was in error because RLP was allowed to introduce a portion of the deposition and "once one party reads part of a deposition the opposing party may introduce additional parts of the same deposition to clarify or explain what has previously been introduced." Respondents three points on appeal will be addressed first, followed by review of Laszewski's points on appeal.

## Point I- Employment Status

For their first point on appeal, Respondents argue the trial court erred in finding it unnecessary to determine Laszewski's employment status in that such a ruling impermissibly broadens the plain language of the statutes, because (1) Sections 290.250 and 290.300 require prevailing wages to be paid to workmen "employed" on a public works project, but not to subcontractors; (2) Laszewski was an independent subcontractor, not an employee; and, (3) requiring prevailing wages to be paid to independent subcontractors violates the due process rights of the general contractor and subcontractors.

The subcontract agreement between RLP and Griffin stated that in order for Griffin to receive payment it was required to submit "[c]ertified weekly payroll affidavits . . . to R.L. Persons Construction, Inc. weekly." When Craig Smith, the controller for RLP, requested affidavits from Griffin, he was told "that [Griffin] didn't have any certified payroll to give [RLP] because he did not have any employees on the project, that he only had subcontractors working under his subcontract." Griffin later confirmed in writing that it had no employees.

Laszewski was unsure whether or not he was an employee of Griffin. Laszewski worked for Griffin sporadically from 1996 to 1999 and testified that at times he worked full time for Griffin and at times he worked at his father's fire extinguisher business. He was paid $8.00 per hour on some jobs for Griffin, but was paid either $12.70 or $12.80 on the public works projects. Other than the on-the-job training he received from Griffin, Laszewski had no formal electrical or construction related training. Griffin paid Laszewski by the hour, provided supplies and tools to him, and generally instructed him on what tasks to perform on the construction site. Laszewski did not receive pay stubs or W–2 forms from Griffin, nor did Griffin withhold any taxes from Laszewski's check. The memo line of the paychecks issued to Laszewski from Griffin indicated that he was being paid for "contract work." Laszewski kept track of his own hours, though he had general requirements as to the hours he was expected to work, and he requested time off as needed.

In 1999, Laszewski filed his tax returns as a "self-employed individual" or a sole proprietor. He was able to claim a mileage deduction from traveling to the job

site in Cape Girardeau and was able to deduct expenses for some tools he had purchased. Laszewski further testified that he had never been informed about the Prevailing Wage Act, did not see the posted notices on the public works projects sites, and until he received a letter from the Division of Labor Standards, he was unaware that he had been underpaid.

Steve Webb, an electrician who worked with Laszewski on the projects for Griffin, testified at trial that he considered himself to be an independent subcontractor and not an employee of Griffin. He did not expect to be paid the prevailing wage because it did not apply to him and he thought that Laszewski knew they were not getting paid according to the scale.

Randy Persons, owner of RLP, indicated that the prevailing wage does not apply to independent contractors and it was his understanding Griffin used solely independent contractors to fulfill its contractual obligations. Persons also hired Laszewski for a short period of time as an employee of RLP.

Gaylon Griffin told Laszewski that the New Madrid project "was a scale job," that he "couldn't afford to pay him the electrician wages," and that since "all the work that [Laszewski] had done in the past had been on a subcontract basis," he would pay him $12.70 per hour. When the Cape project began, Gaylon Griffin told Laszewski "to just go on over" to Cape Girardeau to work and it would be "the same situation" for the "same amount of money." Gaylon Griffin further testified, "Every time I employed [Laszewski] or used—you know, used him as a contractor, every time I did, he—it was just for that job, whatever—whatever he wanted. If he wanted to finish that job, then that was it after that."

Based on the above facts, the trial court found that RLP was reasonable in its reliance upon Griffin's assertions that it had no employees, only subcontractors, and, therefore, it was not required to submit weekly certified payroll affidavits as stipulated in the subcontract agreement and in Section 290.290. Stating that Laszewski "was not an employee of R.L.P.," the trial court concluded it was "unnecessary to determine the exact employment status of the plaintiff on his claim" and that "regardless of employment status, the obligation imposed by the prevailing wage act is to ensure that all 'workmen' who perform work on a public works project are paid at least the prevailing wage."

Boiled down to its simplest component, the issue here is whether the phrase "workmen employed," which is used throughout the Act, requires a workman to be an "employee" of a subcontractor in order to seek recovery for the underpayment of wages. Respondents argue that Laszewski was an independent subcontractor, not an employee, that employment is a critical prerequisite to claiming under the Act, and, therefore, Laszewski was not entitled to receive the prevailing wage. Laszewski, on the other hand, argues that his employment status is irrelevant to his ability to claim under the Act. He asserts that the only prerequisite is that he was underpaid for work he performed on a project that met the definitions of a public works project. The case law surrounding this particular provision of the Act is sparse; however, we are guided by tenets of statutory construction.

In construing a statute, we bear in mind several fundamental concepts. Our ultimate purpose is to ascertain and give effect to the legislature's intent in enacting the statute. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo. banc 1997); *City of Ellisville v. Lohman*, 972 S.W.2d 527, 534 (Mo.App. E.D.1998). In ascertaining legislative intent it is proper that provisions of the entire act be con-

strued together and, if reasonably possible, all provisions should be harmonized. *Ferrell Mobile Homes, Inc. v. Holloway,* 954 S.W.2d 712, 715 (Mo.App. S.D.1997). Because a statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent, each part should be construed in connection with other parts, and "it is not proper to confine interpretation to the one section to be construed." *Id.* "Related clauses are to be considered when construing a particular portion of a statute." *Hagely v. Board of Education,* 841 S.W.2d 663, 667 (Mo. banc 1992).

Being "obligated to give each word, clause, sentence and section of the statute meaning," *Waisblum v. City of St. Joseph,* 928 S.W.2d 414, 417 (Mo.App. W.D.1996), we first observe that the term "workmen" is defined in Section 290.210(8) as "laborers, workmen and mechanics." Yet, the word "employed" is not defined either in Section 290.300 or anywhere else in Chapter 290. Additionally, the terms "employee" and "employer" likewise make no specific appearance in the Act. Therefore, we must ascribe to the phrase "workmen employed" its plain and ordinary meaning. *See Abrams v. Ohio Pacific Express,* 819 S.W.2d 338, 340 (Mo. banc 1991).

With these precepts in mind, we are positioned to review Respondents' first point of error. In doing so, we first revisit the pertinent statutory provisions of the Act that utilize the "workmen employed" language. The stated title of the Missouri Prevailing Wage Act is "An Act regulating wages of laborers, mechanics and other *workmen employed* in the construction of public works." Section 290.210. *(Emphasis added).*

Section 290.250 states in pertinent part: It shall be mandatory upon the contractor to whom the contract is awarded and upon any subcontractor under him, to pay not less than the specified rates to *all workmen employed* by them in the execution of the contract.... The contractor shall forfeit as a penalty ... ten dollars for each *workman employed,* for each calendar day ... such workman is paid less than the said stipulated rates for any work done under said contract, by him or by any subcontractor under him[.] *(Emphasis added ).*

Further, Section 290.300 authorizes a cause of action for underpayment of the prevailing wage to "[a]ny *workman employed* by the contractor or by any subcontractor." *(Emphasis added.)* Additionally, contractors and subcontractors are required to "keep full and accurate records clearly indicating the names, occupations and crafts of *every workman employed* by them in connection with the public work together with an accurate record of the number of hours *worked by each workman* and the actual wages paid therefor." Section 290.290.1. *(Emphasis added ).*

The public policy of this state with respect to wage earners working on public works construction projects is "that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work." Section 290.220. The statutes applicable to prevailing wages on public works, Sections 290.210 to 290.340, provide the mechanism for implementing that policy. "The contractor has overall responsibility to assure that all laborers, both the contractor's employees and subcontractors' employees, receive the prevailing wages for the project." *Board,* 998 S.W.2d at 814.

The Act is based upon and has a similar purpose to the federal Davis–Bacon Act,

40 U.S.C. Section 276a et seq., ("Davis–Bacon") which is intended to guarantee that workers on federal public works projects are paid reasonable wages. *Chester Bross Const. Co. v. Missouri Dept. of Labor and Indus. Relations, Div. of Labor Standards,* 111 S.W.3d 425, 427 (Mo.App. E.D.2003). Davis–Bacon is differentiated from the Missouri Act by a finding that only "employees" are protected under Davis–Bacon and that individuals having the status of an independent contractor are specifically excluded from coverage. *National Labor Relations Board v. United Insurance Co. of America,* 390 U.S. 254, 255, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). *See* National Labor Relations Act, as amended 29 U.S.C. Section 151 *et seq.* The Missouri Act does not define "employee" nor does it specifically exclude "independent contractors." *See* Section 290.210.

█ The controlling element in the case was not that Laszewski may have been an independent contractor but the fact that he performed the work of a laborer or mechanic. We find the language in *Friends of the Zoo,* 38 S.W.3d at 423 particularly instructive: "[a] public body constructing public works may not circumvent the prevailing wage law by a 'carefully constructed legal facade.'" We find that a contractor or subcontractor, which bids on and receives the benefits of a public works job, cannot circumvent the payment to the workmen who perform the actual labor by the use of the term "independent contractor" for all its laborers. The trial court did not broaden the language of the Prevailing Wage law in finding it unnecessary to determine whether Laszewski was an employee or independent contractor. The trial court correctly found that he was a workman employed on a public works project.

█ In the concluding portion of Respondents' first point on appeal, they argue that "[r]equiring prevailing wages to be paid to independent contractors violates the Due Process rights of the general and subcontractors." The rules concerning the timing for raising a constitutional question are firmly established. To preserve a constitutional question for appellate review, it must be raised in the trial court at the earliest opportunity consistent with good pleading and orderly procedure and be further preserved in a motion for new trial. *Hatfield v. McCluney,* 893 S.W.2d 822, 829 (Mo. banc 1995); *Fahy v. Dresser Indus., Inc.,* 740 S.W.2d 635, 639 (Mo. banc 1987). Respondents argue that the constitutional questions only arose after judgment was rendered and therefore, were properly raised the issue for the first time in their Motion to Reopen Evidence. We disagree.

In *Adams v. Children's Mercy Hospital,* 832 S.W.2d 898, 908 (Mo. banc 1992), and *Land Clearance for Redevelopment Authority v. Kansas University Endowment Ass'n,* 805 S.W.2d 173, 175 (Mo. banc 1991), appellants challenging statutory prejudgment interest argued that their constitutional claims only arose after judgment; therefore, their post-trial motions provided the earliest opportunity to raise the issue. The court rejected the argument in both cases because application of the prejudgment interest statute could hardly have been a surprise. *Adams,* 832 S.W.2d at 908. "An attack on the constitutionality of a statute is of such dignity and importance that the record touching such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal." *Land Clearance,* 805 S.W.2d at 176.

Here, Respondents anticipated that Laszewski's employment status would be a major issue at trial. RLP itself filed spe-

cific requests for findings of fact and conclusions of law as to whether Laszewski was an independent contractor or an employee. During trial, RLP questioned witnesses to specifically illicit information targeted toward a finding that Laszewski was an independent contractor. Further, the matter was addressed at length in RLP's proposed Findings of Fact and Conclusions of Law. Therefore, for the reasons outlined in *Adams* and *Land Clearance,* we hold that Respondents waived their due process challenge to the Prevailing Wage Act.

Point I is denied.

## Point II- Evidence Of Dates Of Employment

■ Respondents' second point on appeal alleges that Laszewski failed to establish with sufficient certainty the exact number of hours he worked on the Cape project; therefore, the trial court's award of $28,102.10 was not supported by substantial evidence. Respondents argue that the trial court wrongly stacked inferences upon one another in order to arrive at the ultimate inference that Laszewski was underpaid by $14,051.05. Respondents base this argument on the testimony of their witness Steve Webb; however, there was contradictory testimony by Laszewski. Without restating all of Laszewski's evidence, we note that there was evidence of the total amount of the paychecks, the total number of hours, and the amount paid per hour. The trial court could reasonably calculate the amount of money Laszewski should have received had he been paid the prevailing wage. As we have noted, the credibility of the witnesses and the weight to be given their testimony are matters for the trial court. *Schubert v. Trailmobile Trailer L.L.C.,* 111 S.W.3d 897, 899 (Mo.App. S.D.2003). We review the sufficiency of the evidence to determine whether there is any substantial evidence to support the conclusions of the trial court. *Murphy,* 536 S.W.2d at 32. We find that there is.

Point II is denied.

## Point III- Statute Of Limitations

■ Respondents' third point on appeal alleges that Laszewski's claim under Section 290.300 is barred by either the one-year statute of limitations found in Section 516.380 or the two-year statute of limitations of Section 290.527. It is undisputed that work on the Cape project ceased late in 1999.[9]

The trial court in its findings of fact and conclusions of law stated:

The court will assume that the prevailing wage statute is a penal statute covered by §§ 516.380—516.420. The present action was commenced within three years of when the plaintiff began work and pursuant to § 516.400 is timely. The penalty portion of the prevailing wage act appears in § 290.300 and vests any underpaid workmen with a cause of action for double his underpaid wages. These double damages are not recoverable by anyone who should choose to prosecute, therefore this cause of action does not fall with the parameters of § 516.380 and its one-year statute of limitations. The penalty for back due wages is not collectable by the State, which removes this case from the two-year statute of limitations specified in 516.390. *State Department of Labor and Industrial Relations, Division of*

---

**9.** Randy Persons testified that the Cape project was completed in December of 1999, but that Griffin's electrical work should have been completed by the end of September or early October. Gaylon Griffin testified that his company started the electrical work on the Cape project in August of 1999 and that by November of that year they were finished with the Cape project and were concentrating on the Poplar Bluff project.

*Labor Standards v. SKC Electric Inc.*, 936 S.W.2d 802 (Mo.1997). The penalty provided by § 290.300 is only collectable by underpaid workmen and the cause of action is governed by the statute of limitations set forth in 516.400 and is a three-year statute of limitations. The suit does not involve the federal minimum wage or overtime and does not fall within the two year time limit on such actions. *City of Kansas City v. Integon Idem. Corp.*, 857 S.W.2d 233 (Mo.App. W.D.1993). This cause of action having been commenced within three years is therefore timely.

We find no fault with the trial court's reasoning concerning the law and defer to the trial court on the determination of the factual issue of when Laszewski commenced work. As such, Laszewski's cause of action was timely under the three-year statute of limitations set forth in Section 516.400. Respondents' third point is denied.

**Laszewski Cross–Appeal**

■■■■ Laszewski initially argues in his first point that the trial court erred in disposing of the issue of attorney fees in its original judgment wherein it awarded him $3,750.00 based on his attorney fee agreement. Laszewski advances the position that the trial court should have allowed the record to remain open for further evidence on the amount of his attorney fees or should have granted his motion to reopen the evidence and set aside the original judgment because a substantial portion of his attorney's time was related to post-trial work. He bases this assertion on the fact that his attorney had billed 69.10 hours on this case, or $9,156.45, of which nearly 25 percent of the billable time had occurred in post-trial matters. Although Laszewski admits the court would have acted within its discretion had it awarded the same amount of money after a hearing on the issue of attorney fees, he argues that the trial court was required to have a separate hearing on attorney fees after the trial. Laszewski's final argument is that there was no evidence before the court upon which to base its award of attorney fees. Presumably, Laszewski is not finding fault with the fact that an award of attorney fees was granted in the first place but criticizes the amount of the award.

The determination of attorney fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration. *Miller–Stauch Const. Co. v. Williams–Bungart Elec., Inc.*, 959 S.W.2d 490, 496 (Mo.App. W.D.1998). While it is true that a judge is considered an expert on attorney fees, an award of those fees must be supported by competent and substantial evidence. *In re Marriage of Powell*, 948 S.W.2d 153, 159 (Mo.App. S.D.1997).

Laszewski argues that under *O'Brien v. B.L.C. Insurance Company*, it is reversible error for a trial court to refuse to hear from an attorney entitled by statute to recover reasonable fees. See *O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64 (Mo. banc 1989). In *O'Brien*, the trial court awarded attorney fees of $1000 without holding a hearing or receiving testimony from the parties on the issue of attorney fees.[10] *Id.* at 71. On appeal, the plaintiff contended that the proper award should have been $28,000. *Id.* The Supreme Court of Mis-

---

**10.** The *O'Brien* plaintiff recovered statutory treble damages for the defendant's odometer violation pursuant to Section 407.546, which also provides for the recovery of reasonable attorney fees. *O'Brien*, 768 S.W.2d at 66–67.

souri held the trial court erred in not hearing evidence on the attorney fee issue and remanded for such a hearing. *Id.* Specifically, the court stated that "when attorneys' fees are in issue, the court should hear from the parties just as in other matters. The trial judge erred in not so doing." *Id.*

Respondents counter Laszewski's claims by arguing that Laszewski failed to place the issue of the additional attorney fees before the trial court prior to the entering of the judgment. Respondents call attention to the attorney fee agreement, which was admitted into evidence, between Laszewski and his attorney. The agreement stated the hourly rate for the attorney's services but no further evidence was offered regarding the total number of hours billed or the reasonable value of the attorney's services. Further, while Laszewski's counsel requested in his post-trial correspondence to the trial court that the issue of attorney fees remain open, he made no formal request for a hearing until after the final judgment had been entered. Respondents maintain that the court granted the reasonable amount of attorney fees based upon the court's familiarity with Laszewski's cause of action and the result obtained by trial.

Relying on the provision of Section 290.300 that allows "reasonable attorney's fee to be determined by the court," the trial court included an award of attorney fees in its Findings of Fact and Conclusions of Law. The trial court found that Laszewski's "attorney-client contract call[ed] for compensation at the rate of $125.00 per hour," "that 30 hours is a reasonable amount of time," and awarded Laszewski "total attorney's fees [of] $3,750.00."

Though Laszewski argues the trial court erred in "refus[ing] to hear from counsel regarding reasonable attorney fees," our search of the record fails to reveal that Laszewski ever made such a request. Laszewski had ample opportunity to make his case for attorney fees prior to and during trial. He failed to do so and instead brought this issue up post-trial after incurring additional attorney fees. Although Laszewski's point relied on appears to primarily complain that the attorney fees were included in the judgment without a hearing, the real issue before this court is whether the trial court erred in denying the motion to reopen the evidence for additional testimony. In essence, Laszewski is requesting a partial new trial based on the "new" evidence of his attorney's hours. The breakdown in Laszewski's argument is that the evidence of the number of hours that his attorney spent on the case is not "newly discovered" evidence.

The use of newly discovered evidence is only permissible upon proof of the following: (1) the evidence has come to the party's knowledge since trial; (2) due diligence would not have uncovered the evidence sooner; (3) the new evidence is so material it would probably produce a different result; (4) the new evidence is not cumulative, (5) the affidavit of the witness must be produced or its absence accounted for; and (6) the object of the evidence is not to impeach the character or credit of a witness. *Butts v. Express Personnel Services,* 73 S.W.3d 825 (Mo.App. S.D.2002). The decision whether to reopen a case to permit the introduction of evidence is a matter within the trial court's discretion. *Warren v. Warren,* 784 S.W.2d 247, 255 (Mo.App. W.D.1990).

The evidence of additional attorney fees does not qualify as newly discovered evidence under any of the factors set forth in *Butts.* Most relevant to this discussion is that the new evidence must be so material that it would probably produce

a different result. Laszewski admits that he would not have a complaint had the court reopened the case and then made the exact same determination of attorney fees; thus, Laszewski can not show prejudice or an injury to himself. The decision of the trial court whether to reopen a case will not be interfered with on appeal unless it appears that injury has resulted to the complaining party. *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 328 (Mo.App. W.D.2000).

Unlike *O'Brien*, where the trial court's award was not based on any evidence, the trial court in this matter received into evidence Laszewski's contract with his attorney. The trial court knew how much Laszewski was being charged per hour by his attorney and how much work had been expended. Further, the trial judge presided over this matter for over a year prior to trial. Moreover, in the absence of contrary evidence, the trial court is presumed to know the character of the services rendered in duration, zeal and ability, and to know the value of them according to custom, place, and circumstance. *McClain v. Papka*, 108 S.W.3d 48, 54 (Mo.App. E.D. 2003). The amount of fees assessed was not arrived at arbitrarily. *See Villines v. Mier*, 58 S.W.3d 921, 925–926 (Mo.App. S.D.2001)(holding that the amount of fees was not arrived at arbitrarily where the trial court had an affidavit that identified the time spent on the case and other items related to attorney fees).

The trial court did not err in refusing to grant a partial new trial on the issue of attorney fees nor does this court find fault with the assessment of award of the attorney fees.

Laszewski's Point I is denied.

Laszewski brings two additional points on appeal related to evidentiary issues; however, neither point needs to be addressed by this Court due to our rulings herein. The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.