**HENRY COUNTY WATER COMPANY, Appellant,**

v.

**Karla M. McLUCAS, Director Labor & Industrial Relations Commission, Respondent.**

No. WD 56938.

Missouri Court of Appeals, Western District.

July 5, 2000.

Robert L. Cox, Clinton, for appellant.

David A. Meyer, Jefferson City, for respondent.

Before THOMAS H. NEWTON, P.J., PAUL M. SPINDEN and JAMES M. SMART, Jr., JJ.

JAMES M. SMART, Jr., Judge.

Henry County Water Company appeals a judgment determining that the prevailing wage law applies to public works projects undertaken by Henry County Water Company. Henry County Water Company ("Water Company") contends that the trial court erred in its ruling because the Water Company is not a public body because it is not a political subdivision or a department of the State of Missouri and is not supported by public funds.

**Factual Background**

Prior to 1983, the Missouri Public Service Company, a privately owned utility company, provided water to residents of Clinton and other parts of Henry County. When Missouri Public Service Company offered its facilities for sale, the City of Clinton declined to purchase the facilities itself, apparently concluding that there would be advantages in methods of financing the acquisition if the water facilities were owned by a separate corporation. The Water Company was formed as a not-for-profit corporation in November, 1983. The articles of incorporation of the Water Company state that the object and purposes of the Water Company include,

"[p]romotion of the common good and general welfare of the City of Clinton, in Henry County, Missouri, and its inhabitants and the inhabitants of Henry County by providing water in sufficient quantities for the use of the inhabitants. . . . " The Water Company's board of directors is directed to conduct company business "for the purpose of ultimately vesting in the City of Clinton, the ownership and operation of the water system supplying the water to the inhabitants of the City of Clinton and surrounding territory." Under the articles of incorporation, the city is allowed to cause the facilities of the Water Company to be transferred to the city, at any time, for no consideration, provided that there are funds collected and accumulated to pay and retire the indebtedness of the Water Company.

Since its formation, the Water Company has sold water to the citizens of the City of Clinton and to other residents of Henry County. The Water Company is operated by its own board and employs its revenues to retire its debt and to continue operations.

In 1996, the Water Company prepared to issue bonds to finance the construction of a water intake and treatment plant. In preparation for the project, the Water Company requested a letter from the Division of Labor Standards of the Missouri Department of Labor and Industrial Relations. The Division administers the prevailing wage law, §§ 290.210 through 290.340, RSMo 1994. The Water Company requested a ruling from the Division that the prevailing wage law did not apply to the project contemplated by the Water Company. On November 20, 1997, the Division provided a letter signed by the director of the Division of Labor Standards indicating that the Division had determined that the prevailing wage law was not applicable to the project in question. Shortly thereafter, on January 7, 1998, the Division of Labor Standards issued another letter to the Water Company stating that it had received additional information

regarding the nature of the Water Company's organization and that, based on that information, it had concluded that the prevailing wage law *did* apply to the construction of the water intake and treatment plant.

The Water Company filed an application with the Labor and Industrial Relations Commission on January 27, 1998, seeking review of the Division's determination. The Commission decided that it did not have jurisdiction. The Water Company then filed a petition for declaratory judgment in circuit court, joining as a defendant Carla M. McLucas, the Director of the Department of Labor and Industrial Relations. Ms. McLucas (hereafter, "the Department") filed an answer and a motion for summary judgment with suggestions in support, requesting a ruling that the prevailing wage law does apply to the Water Company.

On February 9, 1999, the circuit court granted the motion and issued findings of fact and conclusions of law, ruling that the prevailing wage law applies to "public work aspects of project undertaken by the Henry County Water Company," and to the "Henry County Water Company's water intake and treatment plant project." The Water Company appeals.

### Prevailing Wage Law

The Missouri prevailing wage law, §§ 290.210 through 290.340, applies to public works projects developed by workers employed by or on behalf of a public body. Section 290.220, RSMo 1994, provides:

It is hereby declared to be the policy of the state of Missouri that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work.

"Public works" are defined by statute as "all fixed works constructed for public use or benefit or paid for wholly or in part out of public funds." Section 290.210(7), RSMo 1994. A public body is defined as "the state of Missouri or any officer, official, authority, board or commission of the state, or other political subdivision thereof, or any institution supported in whole or in part by public funds." Section 290.210(6), RSMo 1994.

Section 290.230.1, RSMo 1994, provides in pertinent part:

Not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed ... shall be paid to all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work.

The Missouri courts have not specifically discussed the purpose behind the prevailing wage law, which was adopted in 1957. However, the law appears to be based on, and have a similar purpose to, the federal Davis–Bacon Act, 40 USCA § 276(a) et seq. Davis–Bacon was originally enacted in 1931 as a "minimum wage law designed for the benefit of construction workers" which "protect[s] ... employees from substandard earnings by fixing a floor under wages" on projects of the federal government. *United States v. Binghamton Constr. Co., Inc.*, 347 U.S. 171, 177–178, 74 S.Ct. 438, 98 L.Ed. 594 (1954). The Act is designed to insure that workers on public projects be paid reasonable wages. The Act was passed during the depression era in order to "insure that workers on federal construction projects would be paid the wages prevailing in the area of construction." *Building and Const. Trades' Dep't, AFL–CIO v. Donovan*, 229 U.S.App.D.C. 297, 712 F.2d 611, 613 (1983). It was also aimed at preventing rival companies from competing for contracts by transporting from distant areas workers who would work for substandard wages. *Vulcan Ar-*

*bor Hill Corp. v. Reich*, 81 F.3d 1110, 1111 (D.C.Cir.1996).

## Contention on Appeal

In its sole point, the Water Company argues that the trial court erred in ruling that the prevailing wage law applies to the Water Company because it is not a public body performing public works. The Water Company points out that it is not a political subdivision or department of the state or the city, and it is not supported by public funds. The Water Company also asserts that the city has no involvement with the project. The Water Company argues that the mere fact that the city can request transfer of the assets after all of the Water Company's debts are retired does not convert the Water Company into a public entity or mean that the Water Company is acting on behalf of the city.

The Department contends, in response, that the Water Company's project is a public work under the prevailing wage law. It points out that the Water Company's articles of incorporation provide that the corporation is organized to promote the common good and the general welfare of the City of Clinton. The Department also argues that the arrangement for the Water Company to own the water facilities for the city is a public benefit. The prevailing wage law applies not only to projects developed by public bodies, the Department points out, but also to projects developed "on behalf of any public body." The Department also argues that the prevailing wage law is a remedial law designed to protect workers and reflects the public policy of the state. The Department argues that therefore the statute should be construed liberally and broadly.

## Standard of Review

■ We will affirm the judgment of the trial court in this court-tried case unless the trial court misapplied the law, or unless there is no substantial evidence to support the judgment, or unless the judgment is against the weight of the evidence.

*Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Analysis

■ For the workers on this project to be governed by the prevailing wage law, the project must constitute a "public work," and the project must involve workers "employed by or on behalf of any public body engaged in public works." Section 290.220, RSMo 1994; *see also State ex inf. Webster v. City of Camdenton,* 779 S.W.2d 312, 316 (Mo.App.1989); *State ex rel. Ashcroft v. City of Sedalia,* 629 S.W.2d 578, 583 (Mo.App.1981). Accordingly, we review the determination of the circuit court that this project is a public work and the finding that the workers were employed on behalf a public body.

The water intake and treatment plant in question in this case is clearly intended for the benefit of the public. The Water Company does not seriously argue otherwise, focusing its argument upon whether the Water Company can be considered a public body. The Water Company contends that it is not a public body as defined by 290.210(6). It is not an "officer, official, authority, board or commission of the state or a political subdivision thereof." It is not supported by public funds, but rather by the funds it receives from the sale and delivery of water to its customers.

The Water Company also points out that in 1986, the Water Company filed a petition against various property tax collectors in Henry County to recover property taxes paid under protest in 1984 and 1985. The Water Company claimed in that action that it was exempt from taxes as a "political subdivision" or an "alter ego of the City of Clinton." In that case, the circuit court determined that the water company was not exempt from taxation, that it was not a part of the City of Clinton or a department of the city, and that if the water company or the City of Clinton wanted the property to be free of taxation, its assets would have to be transferred to the city and become the property of the city. The Water Company argues that this is a prior judicial determination that the Water Company was not a political subdivision of the state nor an alter ego of the city, and it argues that this court should be guided by that determination.

The Department, in response, reminds us that it is not necessary for the Water Company to be a public body for the prevailing wage law apply in this case. It is enough, says the Department, if the Water Company employs workers "on behalf of" a public body. Thus, says the Department, even if the Water Company is not exempt from property taxation as being a department of the city,[1] the Water Company can still be found to be engaging workers on behalf of the City of Clinton.

## "On Behalf Of"

If the "on behalf of" language of the prevailing wage law were construed as narrowly as argued by the Water Company, then public entities would be able to avoid the prevailing wage law by arranging with a private entity for the private entity to construct the public work on private property. Then, the public entity would simply lease or purchase the property after construction of the improvements, by workers paid less than the "prevailing wage."

This scenario is clearly illustrated in *State ex inf. Webster v. City of Camdenton,* 779 S.W.2d 312 (Mo.App.1989). The City of Camdenton in that case conveyed property to a private corporation under an agreement that the corporation would construct a firehouse and police station to be built on the property. *Id.* at 313. The parties agreed that the city would have a lease with an option to purchase the prop-

---

1. The Department also argues that an entity can be a political subdivision for one purpose and not for another, citing authority. However, we need not address whether the Water Company is a political subdivision because the "on behalf of" language of the statute broadens the application beyond public bodies themselves.

erty. *Id.* The private corporation engaged another private entity to do the construction. *Id.* at 314. The agreements between the parties allowed the City of Camdenton to prescribe the specifications and to participate in supervising the construction. *Id.*

The Attorney General filed an action seeking a declaration that the prevailing wage law was applicable to the construction. *Id.* The City of Camdenton argued that, under a literal reading of controlling documents, no workers were employed "by it" or "on its behalf." *Id.* at 315. The City pointed to the fact that it was not obligated to purchase the improvements and after the initial year the city had the option to terminate the lease. *Id.* The circuit court denied relief to the Attorney General. *Id.* On appeal, the court of appeals reversed the circuit court. *Id.* at 318. The court said that "[t]o hold that this carefully constructed legal facade insulates the construction of the firehouse/police station from the Prevailing Wage Act would be to place form over substance.... Inherent in the design of the building and its location is a compelling inference that it is to be used by Camdenton." *Id.* at 316.

### Real and Ultimate Beneficiary

The Water Company argues that this case differs from *Camdenton* in that, among other things, the city has no involvement in the design and construction of the water plant. While we recognize there are differences between this arrangement and that in *Camdenton,* we believe that the striking similarity is that in each case the city was the real and ultimate beneficiary of the project. In this case and in *Camdenton* the public entity in question chose to have the private entity acquire the property; and although the private entity engaged in the construction, in each case the public entity was assured of ultimately benefiting from the new construction. In *Camdenton,* the agreements between the various parties insured that the city would ultimately own the firehouse and police station. In this case, the organizational documents of the Water Company insure that the City will ultimately own the intake and treatment plant. Article V(e) of the articles of incorporation of the Water Company states that "[t]he board of directors of the company shall ... conduct the affairs of the company for the purpose of ultimately vesting in the City of Clinton the ownership and operation of the water system supplying water to the inhabitants of the City of Clinton and surrounding territory, that territory presently served by the City of Clinton." Transfer to the city may be made at any time, on request from the city, for no consideration, provided that the Water Company's debt is retired (or there are funds available to pay the debt). Article V(f) confirms that the water company is held and operated "for the use and benefit of the inhabitants of the City of Clinton and the County of Henry."

This case is not like *Sedalia,* 629 S.W.2d 578, on which the Water Company relies. In *Sedalia,* the city was interested in attracting to its community the Gardner–Denver Company, a privately-owned manufacturing company. *Id.* at 581. The city decided to ask the voters to approve the issuance of industrial revenue bonds so that the city could purchase property and allow Gardner–Denver to construct an industrial plant on the premises to be used by Gardner–Denver to manufacture industrial equipment. *Id.* The City of Sedalia entered into a lease with Gardner–Denver. *Id.* At the end of the term of the lease, Sedalia was obligated to sell the property, and Gardner–Denver was obligated to buy the property, for a nominal consideration. *Id.* Gardner–Denver was responsible for all costs exceeding the proceeds resulting from the sale of the industrial revenue bonds. *Id.* Gardner–Denver also personally guaranteed payment of all amounts due to holders of the bonds. *Id.* The court in that case held that the workers involved in the construction were not employed "on behalf of" the City of Sedalia. The court

did not regard Gardner–Denver as acting as an agent of the city. Instead, the stockholders of Gardner–Denver were the true and ultimate beneficiaries of the construction. The city was providing assistance and sponsorship for the project, but the city's interests were served only indirectly through such benefits as the creation of additional jobs for the community (and, we would assume, most construction projects provide some degree of such indirect benefits).

In that case, the public entity was assisting the private entity. In this case, in contrast, the private entity is assisting the public entity. The City of Clinton stands to benefit directly from the construction by ultimately owning and using all of the assets of the Water Company, which now functions as an adjunct to the city in its public purposes. We conclude, therefore, that the ruling in *Camdenton* is applicable here. We hold that the Water Company employed workers "on behalf of" a public entity for the construction of a public work within the meaning of the prevailing wage law.

### Conclusion

For all the foregoing reasons, we affirm the judgment of the trial court.

NEWTON and SPINDEN, JJ., concur.