In the
 Missouri Court of Appeals
 Western District

 
 ALVIN BROCKINGTON, Individually 
 and On Behalf of All Similarly-Situated, 
 Appellant,  WD83838
 
 v.  OPINION FILED:
 
 NEW HORIZONS ENTERPRISES, LLC,  NOVEMBER 23, 2021
 
 Respondent. 
 

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Sandra Midkiff, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, Karen King Mitchell, Judge,
 Anthony Rex Gabbert, Judge

 Alvin Brockington, individually and on behalf of all similarly-situated (“Appellant”),

appeals the circuit court’s grant of summary judgment to New Horizons Enterprises, LLC (“New

Horizons”) on Appellant’s “Amended Class Action Petition” which alleged that New Horizons

violated the Missouri Prevailing Wage Act (Sections 290.210-290.340)1 and the Missouri

Minimum Wage Law (Sections 290.500-290.530). Appellant contends that the circuit court erred

in granting New Horizons’ motion for summary judgment, arguing that a reasonable jury could

find that the prevailing wage act applied to Appellant in that evidence in the record presents a

 1
 All statutory references are to the Revised Statutes of Missouri as updated through 2013, unless otherwise
noted.
genuine issue of material fact as to whether the Commonwealth Project was performed “on behalf

of” a public body. We affirm.

 Background and Procedural Information

 On November 20, 2013, Laborers’ International Union of North America, Local 264,

individually and on behalf of a class of all similarly-situated, filed a Petition alleging New

Horizons violated the Missouri Prevailing Wage Act and the Missouri Minimum Wage Law. On

January 17, 2017, Alvin Brockington was joined as a party and substituted for the Union as the

class representative. Appellant’s “Amended Class Action Petition” was filed January 17, 2017,

and included the same Missouri Prevailing Wage Act and Missouri Minimum Wage Law

allegations.

 As relevant to the claims in this appeal, Missouri’s Prevailing wage Act provides:

 Not less than the prevailing hourly rate of wages for work of a similar character in
 the locality in which the work is performed, and not less than the prevailing hourly
 rate of wages for legal holidays and overtime work, shall be paid to all workmen
 employed by or on behalf of any public body engaged in the construction of public
 works, exclusive of maintenance work.

§ 290.230.1. The rate is established annually by the Missouri Department of Labor and Industrial

Relations. See § 290.262. “Public body” is defined to include “the State of Missouri or any officer,

official, authority, board or commission of the state, or other political subdivision thereof, or any

institution supported in whole or in part by public funds. § 290.210(8), RSMo Cum. Supp. 2018.

 Appellant alleged that Appellant formerly worked for New Horizons, a construction

contractor based in Kansas City, Missouri, focused on asbestos remediation. Beginning in 2011,

New Horizons performed work as a subcontractor on a project or series of projects, generally

known as the “Commonwealth Project.” The Commonwealth Project involved the comprehensive

rehabilitation and refinishing of multi-family housing units along Armour Boulevard and Locust

 2
Street in midtown Kansas City. Appellant alleged that the Commonwealth Project was paid for in

whole or in part with public funds through tax abatements and incentives. Appellant alleged that

the Commonwealth Project was constructed for public use, with the power of eminent domain

being conferred in connection with the project.

 Appellant alleged that the Commonwealth Project was overseen by the Planned Industrial

Expansion Authority (“PIEA”), a governmental agency. Appellant performed construction work

on this project for New Horizons. Appellant alleged that New Horizons did not pay the prevailing

wages required for any possible applicable wage classification. Appellant received about $15.00

per straight-time hour of work. Under Annual Wage Order No. 19, which went into effect in 2012,

the Jackson County prevailing wage rate for a second semiskilled laborer – the category covering

asbestos removal – was $26.55. The fringe benefit amount was an additional $13.75, totaling an

hourly compensation of $40.30. Appellant regularly worked in excess of forty hours per week on

the Commonwealth Project. New Horizons only paid one-and-a-half times the $15.00 hourly rate,

and not one-and-a-half times the prevailing wage rate. Appellant alleged that employees

complained about the failure of New Horizons to pay prevailing wages, and New Horizons

retaliated against some of these employees, firing at least one.

 Appellant alleged that New Horizons’ semiskilled laborers were employed by or on behalf

of a public body engaged in the construction of public works, exclusive of maintenance work.

Appellant alleged that New Horizons violated the Missouri Prevailing Wage Act when it paid the

semiskilled laborers less than the applicable prevailing wage. Further, Appellant alleged that New

Horizons violated the Missouri Minimum Wage Law by failing to pay overtime based on the

prevailing wage rate.

 3
 New Horizons answered Appellant’s petition, denying that it violated Missouri’s prevailing

or minimum wage laws. New Horizons ultimately filed a Motion for Summary Judgment on

December 20, 2019. Therein, New Horizons argued that it was undisputed that New Horizons’

employees performed work on privately owned property under work orders entered into with a

private entity, The Silliman Group, LLC. Further, New Horizons argued that it was undisputed

that New Horizons did not enter into any construction contracts with the City of Kansas City,

Missouri (“City”) or PIEA, for said work. New Horizons argued that Appellant had not produced,

and would not be able to produce, evidence showing that New Horizons’ employees who

performed work under work orders entered into between New Horizons and The Silliman Group,

LLC, were employed by or on behalf of PIEA or the City, which is required for statutory coverage

under the Missouri Prevailing Wage Act. Further, as Appellant’s Missouri Minimum Wage Law

claim required a finding that New Horizons violated the Missouri Prevailing Wage Act by not

paying overtime consistent with the Missouri Prevailing Wage Act, this claim was also

unsupported.

 Appellant countered that the Prevailing Wage Act applied to the work performed by New

Horizons’ employees because the Commonwealth Project was publicly-funded. Appellant

contended that the Commonwealth project was overwhelmingly financed with public money in

the form of direct government appropriations and tax credits that have immediate exchangeable

value, and government bonds were also issued. Appellant argued that, because “public money

constituted the lion’s share of the funding, it is impossible to deny that the Commonwealth Project

was built ‘by or on behalf of a public body.’” Appellant argued that the construction work was for

a public project which, therefore, entitled New Horizons’ workers to be paid prevailing wage.

Further, Appellant argued that The Silliman Group, LLC is a related entity to the Commonwealth

 4
developer that received the government funds, as they operate with common management, and

New Horizons considers them functionally the same. Appellant argued that it was immaterial that

New Horizons did not contract directly with a public entity, citing Div. of Labor Standards v.

Friends of the Zoo of Springfield, Missouri, Inc., 38 S.W.3d 421, 424 (Mo. banc 2001).

 Appellant filed its own “Appellants’ Motion for Partial Summary Judgment on Liability”

on the same date New Horizons filed its motion, and noted therein that Appellant anticipated

raising most of Appellant’s arguments in response to New Horizons’ motion. In its own motion,

Appellant argued that, because Appellant performed construction work on a public project – a

public job paid for by public money – Appellant was entitled to be paid prevailing wage. Appellant

asked that the circuit court decide the issue of liability in Appellant’s favor, and proceed to jury

trial on the issue of damages.

 New Horizons responded that the public funding claimed to have been received from the

City was in the form of a grant that was specifically designated to cover the cost of blight

remediation work performed by contractors engaged by the developer. It was undisputed that New

Horizons did not perform work for any contractor engaged by the developer. Nor was there

evidence that New Horizons performed blight remediation work under the controlling documents.

New Horizons argued that Appellant had no evidence that the work performed by New Horizons’

employees was performed on behalf of a public entity, a requisite showing to establish liability

under the Missouri Prevailing Wage Act.

 On April 6, 2020, the circuit court entered an “Order Overruling Defendant’s Motion for

Summary Judgment.” On April 27, 2020, the circuit court set aside that order, noting that the order

was an unfinished draft entered in error. On that same date, the circuit court denied Appellant’s

motion for partial summary judgment, granted New Horizons’ motion for summary judgment, and

 5
entered Judgment for New Horizons. The following day, the circuit court set aside that Judgment

to allow Appellant to obtain a deposition that had previously been ordered and scheduled, but not

yet held, in connection with a contempt motion. Following the deposition, Appellant filed

additional exhibits and a supplemental response to New Horizons’ Statement of Material Facts.

On May 11, 2020, the circuit court again entered an order granting New Horizons’ motion for

summary judgment, and entered Judgment against Appellant and in favor of New Horizons. The

circuit court analyzed the facts as follows:

 In this case the factual record on the City’s involvement in construction
 itself (as distinguished from financial oversight) is nonexistent. The City’s
 involvement appears to have been focused on prevailing wage compliance and
 resolving disputes on prevailing wage claims. Appellant has produced no evidence
 of any facts demonstrating that the City or PIEA was involved in the construction
 in this redevelopment project. The factual record lacks any indication that the plans
 and specifications for the public works were supplied only by the City or PIEA; no
 record that the City or PIEA retained the right to change the plans; no record that
 the City or PIEA supervised the construction work in this case. Rather, the City
 and PIEA’s involvement appears to have been focused on financial oversight of the
 project and oversight of Prevailing Wage Act compliance.

 Appellant has provided evidence of financial controls and financial
 monitoring imposed by the City; that however is financial oversight – different
 from the City or PIEA’s actual involvement in the construction itself.

 …

 Based on the provisions of the Prevailing Wage Act and the applicable case
 law, this court finds that the City’s financial monitoring of the redevelopment
 project does not amount to the City and PIEA circumventing the prevailing wage
 law by a ‘carefully constructed legal façade.’ The court concludes that the
 Prevailing Wage Law does not apply to the work performed by New Horizon
 employees based on work orders from the Silliman Group, LLC. Defendant is
 entitled to judgment, as a matter of law, on both Counts I and II of Appellant’s
 Petition[] filed in this case.

This appeal follows.

 6
 Standard of Review

 The standard of review for an appeal challenging the grant of a motion for summary

judgment is de novo. ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376

(Mo. banc 1993). In such cases, we do not defer to the trial court’s decision, but instead use the

same criteria that the trial court should have employed in initially deciding whether to grant the

motion. Barekman v. City of Republic, 232 S.W.3d 675, 677 (Mo. App. 2007). We review the

record in the light most favorable to the party against whom judgment was entered, and accord

that party the benefit of all inferences which may reasonably be drawn from the record. Id.

Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts

as to which there is no genuine dispute, a right to judgment as a matter of law. ITT Com. Fin.

Corp., 854 S.W.2d at 376. A genuine issue that will prevent summary judgment exists where the

record shows two plausible, but contradictory, accounts of the essential facts and the genuine issue

is real, not merely argumentative, imaginary, or frivolous. Id. at 382. “Facts set forth by affidavit

or otherwise in support of a party’s motion are taken as true unless contradicted by the non-moving

party’s response to the summary judgment motion.” Id. at 376. The moving party bears “the

burden of establishing a legal right to judgment and the absence of any genuine issue of material

fact required to support the claimed right to judgment.” Id. at 378.

 A ‘defending party’ may establish a right to summary judgment by showing: (1)
 facts negating any one of the claimant’s elements; (2) that the party opposing the
 motion has presented insufficient evidence to allow the finding of the existence of
 any one of the claimant’s elements; or (3) that there is no genuine dispute as to the
 existence of each of the facts necessary to support a properly pleaded affirmative
 defense.

Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc., 155 S.W.3d 50, 58-59 (Mo. banc 2005).

 7
 Point on Appeal – Propriety of Summary Judgment

 In its sole point on appeal, Appellant contends that the circuit court erred in granting New

Horizons’ motion for summary judgment, arguing that a reasonable jury could find that the

prevailing wage act applied to Appellant’s work, in that evidence in the record presents a genuine

issue of material fact as to whether the Commonwealth Project was performed “on behalf of” a

public body.

 We note that both parties moved for summary judgment on the same date. Both parties

submitted statements of material fact with supporting exhibits requesting the circuit court to make

the legal determination as to which party was entitled to judgment as a matter of law after applying

the uncontroverted material facts to the Prevailing Wage Act. New Horizons moved for summary

judgment contending that the summary judgment record showed that Appellant was not employed

“by or on behalf of” PIEA or the City in the work performed by Appellant on the Commonwealth

Project. Appellant moved for partial summary judgment on the issue of liability, contending that

the uncontroverted facts showed that Appellant was in fact employed “by or on behalf of” a public

body and should have been paid prevailing wages. Hence, while Appellant’s point relied on is

phrased in terms of a question of material fact as to whether a jury could find that the

Commonwealth Project was performed “on behalf of” a public body, both sides presented the court

with essentially the same supporting “evidence” and asked the circuit court to apply the Prevailing

Wage Act to those undisputed facts. Rule 74.04(c)(6) provides that, “[i]f the motion, the response,

the reply and the sur-reply show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law, the court shall enter summary judgment

forthwith.” (Emphasis added). The circuit court, and not a jury, is granted authority in such cases.

 8
 The issue here is whether the circuit court misinterpreted the law or misapplied the facts to

the law. Despite the wording of Appellant’s point relied on, this is essentially the argument made

in Appellant’s brief, wherein Appellant contends that the circuit court misinterpreted “by or on

behalf of” to mean “by and on behalf of” and, had the circuit court not made this error, the facts

support application of the Prevailing Wage Act to Appellant’s work on the Commonwealth

Project.2

 Appellant erroneously contends that whether construction occurred “by or on behalf of” a

public body is now a question of fact for a jury, arguing that Friends of the Zoo reversed and

remanded a grant of summary judgment “because factual inferences could support two

conclusions.” 38 S.W.3d 421. This is not what Friends of the Zoo held. Like here, the issue of

whether the undisputed material facts supported that workers on a public works project were

employed “by or on behalf of” a public body was presented to the circuit court for decision in

cross-motions for summary judgment. Id. at 424. As here, the parties submitted their motions to

the circuit court asserting that no material facts were in dispute to bar a determination on the

ultimate issue presented. Id. The Missouri Supreme Court ultimately concluded that neither party

was entitled to summary judgment because the record was incomplete as to “the specific acts by

the city employee” on the project, and that “if the city, through its employee, is engaging in public

works, based on all the facts and circumstances, then Friends of the Zoo is building the reptile

 2
 New Horizons filed “Respondent’s Motion to Strike Appellant’s Brief and Dismiss Appeal,” which was
taken with the case. The motion argues that Appellant’s briefing suffers from various Rule 84.04 deficiencies
necessitating that the case be dismissed. Although we agree that Appellant’s point relied on states that a genuine issue
of material fact exists as to whether the Commonwealth Project was performed “on behalf of” a public body, and the
body of the briefing does not discuss disputed facts but instead argues that the court misapplied the law to the facts
and/or misinterpreted the law, because Appellant’s argument is fairly encompassed within the point relied on and we
prefer to decide a case on the merits where an appellant’s argument is readily understandable, we exercise our
discretion to review the merits of Appellant’s claim. New Horizons’ motion is denied.

 9
house on behalf of the City.” Id. (Emphasis original). The record showed that the circuit court

had denied the State’s request to depose the employee referenced, the zoo superintendent, who

could shed light on that issue. Id. The Missouri Supreme Court never stated, as Appellant

contends, that it was reversing because factual inferences could support two conclusions – the

Missouri Supreme Court remanded for the discovery of more definite facts, so that the ultimate

question could be decided. Id. The Missouri Supreme Court did not remand for trial. Id.

Moreover, to the extent Appellant is attempting to raise an additional argument with this court that

was not raised below, it has been waived. “When reviewing the trial court’s grant of summary

judgment, we are confined to addressing only those issues properly raised in the [] motion for

summary judgment and the responses thereto.” Kissinger v. Am. Family Mut. Ins. Co., 563 S.W.3d

765, 780 n.10 (internal quotation marks and citation omitted).

 Material Facts

 The following are material facts that, unless otherwise noted, are not disputed by the

parties. If information is garnered directly from an exhibit relied upon by the parties, the

information cited therein will be considered factual, unless otherwise noted.

 PIEA is a public body created pursuant to Ordinance No. 34677, passed by the City Council

of Kansas City, Missouri on February 9, 1968, pursuant to Sections 100.300 through 100.620 of

the Revised Statutes of Missouri. PIEA’s stated purpose is to remove blight from designated areas

and promote redevelopment of such blighted areas.

 On February 28, 2011, PIEA entered into a Redevelopment Agreement with

Commonwealth-KC Corp., Inc. as Developer to “undertake a portion of the blight remediation”

for properties located at various locations in mid-town Kansas City, which were collectively

referred to as the “Commonwealth Project.” The Redevelopment Agreement addressed the

 10
rehabilitation of the properties that comprised the Commonwealth Project, which would provide

approximately six hundred apartment units for rent to the general public. Neither the City nor

PIEA owned the properties that comprised the Commonwealth Project. Under the Redevelopment

Agreement, the parties agreed that “Completion of the Commonwealth Project will significantly

contribute to the commercial and residential revitalization of the City’s Armour Boulevard

corridor.” In consideration of the Developer agreeing “to undertake a portion of the blight

remediation on the real property” associated with the Commonwealth Project, PIEA agreed to

“contribute a sum not to exceed $6,500,000.00” to the Developer. The Developer was to “apply

the funds contributed by the Authority exclusively towards blight remediation costs of the Project,

which are anticipated to include up to $6,500,000.00 in masonry, window, HVAC, electrical, and

plumbing costs (the ‘Blight Remediation’).” Along with various provisions requiring the

Developer’s legal compliance with tax laws, agreement to award contracts in connection with the

Blight Remediation to the lowest and best bidder, compliance with the City’s ordinances regarding

the hiring of minority and women, etc., the Redevelopment Agreement required that, “Developer

and each of its Contractors shall comply in all respects with the prevailing wage laws of the State

of Missouri and any federal prevailing wage laws that apply to the work.”

 In March 2011, PIEA sent the City a “Notice of Intent to Accept Redevelopment Contract

Proposal of Commonwealth-KC, LLC for the Commonwealth Project in the Amended Armour-

Gillham PIEA Area.” Therein, PIEA discussed that the Developer planned to invest approximately

“$57 million to acquire and renovate 13 properties (10 of which are subject to this tax abatement

request)[.]” With regard to “Financing,” the Notice stated that it would be in the form of:

“Conventional debt (in the form of tax exempt bonds) in the amount of $38 million, State Tax

Credits of $4,268,000, Federal Tax Credits of $4,554,000, KCMO Grant of $4,094,496 and

 11
developer equity of $5,973,504.” With regard to “Employment,” the Notice stated that the “project

will provide approximately 150 temporary construction jobs paying prevailing wages and 4

permanent management and property maintenance jobs.”

 In April 2011, and as amended December 15, 2011, PIEA entered into a “Funding

Agreement” with the City. After discussing how the completion of the Commonwealth Project

will significantly contribute to the commercial and residential revitalization of the City’s Armour

Boulevard corridor, the Agreement stated that the City desired to “appropriate additional funding

to support PIEA’s efforts to remediate blight” through its assistance to the Commonwealth Project.

The City agreed to contribute $6,500,000.00 to PIEA for the Commonwealth Project, and PIEA

was to use the money toward remediating blight, as provided in the Redevelopment Contract with

the Developer.

 On or about November 1, 2011, PIEA entered into a “Contract for Prevailing Wage

Monitoring Service for the Commonwealth Project” in which PIEA and Strategic Workplace

Solutions, Inc. (“SWS”) agreed that “PIEA is requiring, by contract, the General Contractor and

all subcontractors on the Commonwealth Project to comply with the Missouri Prevailing Wage

Law, which includes the Excessive Unemployment Law (Chapter 290.550-.50 RSMO), and/or the

Davis Bacon Act, and related labor laws applicable to this construction project as specified in the

Development Agreement by and between the Project owners and the Client [PIEA].”

 In December 2011, PIEA executed a Development Contract with Commonwealth-KC,

LLC as Developer and on behalf of the owner, Commonwealth Holdings, LLC, for the

rehabilitation of those properties identified as the Commonwealth Project. The Development

Contract set forth the terms of tax abatement financing that was granted to the Developer as an

incentive to engage in the Commonwealth Project. Under the Development Contract’s terms,

 12
PIEA was to retain the services of SWS so that PIEA could monitor the Developer’s compliance

with “Prevailing Wage Laws, payroll reporting and e-tax requirements.” The Developer was to

reimburse PIEA of SWS’s costs up to a maximum stated amount.

 SWS’s owner and operator, Colleen White, drafted the “Prevailing Wage” language

contained within the Development Contract between PIEA and the Developer. Under the

Development Contract, the Developer had the option of paying prevailing wages for “construction

work as part of the Project” at either the residential rates established under the Davis Bacon Act,

40 U.S.C. §§ 3141, et seq. for Jackson County, Missouri or the state prevailing wages required

under the Missouri Prevailing Wage Law. At the time the work was performed on the

Commonwealth Project, the Davis Bacon residential rate for laborers work in the Kansas City area

was $21.05 per hour, whereas the prevailing wage under Missouri’s Prevailing Wage Act for

laborers ranged from $38.90 to $39.70 per hour.

 When White drafted the Prevailing Wage language for the Development Contract, she did

not require that the highest prevailing wage apply to work that the Developer’s contractors

performed on the Commonwealth Project, because she believed that the project was not statutorily

covered by the Prevailing Wage Act. White based this conclusion on her belief that the contractors

whose employees performed work for the Developer were not employed either by or on behalf of

the City or PIEA, and because the Prevailing Wage Act did not provide for prevailing wages that

covered residential work, which was the type of work performed in connection with the

Commonwealth Project. PIEA, in apparent acceptance of this position, did not seek a wage

determination from the State of Missouri Division of Labor Standards prior to any work being

commenced on the Commonwealth Project, or file any project notification with the State of

Missouri Division of Labor Standards regarding the identity of the general contractors and

 13
subcontractors working on the Commonwealth Project, which are requirements for projects

covered by Missouri’s Prevailing Wage Act.

 The Developer selected Haren Laughlin Construction as the General Contractor for the

Commonwealth Project; Haren Laughlin then selected subcontractors. New Horizons is a

contractor based in Kansas City which provides a full range of environmental services, including

but not limited to asbestos remediation. New Horizons submitted work orders to The Silliman

Group, LLC to perform asbestos abatement, mold remediation, window board-up/removal,

demolition, and trash removal for some of the properties included within the Commonwealth

Project. New Horizons contended in their motion for summary judgment that none of City’s

money could be used for payment to New Horizons, because the work performed pursuant to the

work orders could not be considered “masonry, window, HVAC, or electrical or plumbing work”

as required by the City for the application of City funds. Appellant disagreed and contended that

window board up/removal was “window work.”

 Case Law Interpreting the Applicable Provisions of the Prevailing Wage Act

 As noted above, Section 290.230 provides that, prevailing wages “shall be paid to all

work[ers] employed by or on behalf of any public body engaged in the construction of public

works, exclusive of maintenance work.” “Public works” are defined, in part, as “all fixed works

constructed for public use or benefit or paid for wholly or in part out of public funds.” §

290.210(9), RSMo Cum. Supp. 2018.

 Friends of the Zoo involved the Missouri Supreme Court’s application of uncontroverted

material facts presented on cross-motions for summary judgment to determine if workers involved

in a project for Springfield’s city zoo (“Zoo”) were working “on behalf of” the city engaged in

public works. 38 S.W.3d at 422. Friends of the Zoo involved a charitable organization in

 14
Springfield, Missouri, desirous of aiding development of the Zoo through construction of a 2,700-

square foot building for reptile exhibits. Id. Friends of the Zoo of Springfield, Missouri, Inc. was

to fund the project, located on Zoo property, and ultimately donate the exhibit to the city. Id. The

city did not believe prevailing wages were required on the project; the Division of Labor Standards

believed otherwise and sued to enforce Missouri’s prevailing wage laws. Id.

 The Court ultimately determined that neither party had established a right to summary

judgment because the record was incomplete with regard to what acts the Zoo superintendent, a

city employee, had taken with regard to the reptile house project. Id. at 424. Before reaching this

conclusion, however, the Court emphasized that, because it is presumed that every word, clause,

sentence, and provision of a statute is intended by the legislature to have effect and be operative,

a project meeting the “public works” component of the statute does not necessarily mean that the

project workers are employed on behalf of a public body engaged in public works. Id. The Court

expressly abrogated Henry County Water Co. v. McLucas, 21 S.W.3d 179 (Mo. App. 2000), which

held that, although a city was not involved in the design and construction of a public work, because

the city would benefit directly from the construction, the private entity employing construction

workers was deemed to be employing workers “on behalf of” the public body. Friends of the Zoo,

38 S.W.3d at 423 (citing Henry County Water Co., 21 S.W.3d at 183). Friends of the Zoo held

that, because the “real and ultimate beneficiary” concept was contained within the statutory

definition of “public works,” this could not also be the test for the separate statutory requirement

that the workers be employed “by or on behalf of any public body engaged in the construction of

public works.” Id.

 Friends of the Zoo further discussed that, construction “on behalf of” a public body is not

so narrow as to require that the private entity be an agent of the public body, by general principles

 15
of agency law. Id. The Court noted the dictionary definition of “on behalf of” to be “in the interest

of: as the representative of: for the benefit of.” Id. The Court used this definition to explain that

the legislature intended a broader application of “on behalf of” than the laws of agency advocated

by the city. In light of the Court’s express abrogation of Henry County Water Co., we cannot

conclude that the Court intended in quoting the dictionary definition of “on behalf of” to include

“for the benefit of,” that a mere showing that the public body will benefit from the project is

sufficient to prove the project is subject to the prevailing wage laws. Friends of the Zoo ultimately

focuses on whether the city, through the Zoo superintendent who was a city employee, was actually

engaged in the construction of the public work. Id. at 424.

 The Friends of the Zoo Court admonished that, “A public body constructing public works

may not circumvent the prevailing wage law by a ‘carefully constructed legal façade.”’ Id. at 423

(quoting State ex inf. Webster ex rel. Division of Labor Standards v. City of Camdenton, 779 S.W.2d

312, 316 (Mo. App. 1989). “Where, by all the facts and circumstances, a private entity and a public

body create a façade behind which the public body engages in public works, the workers are

employed on behalf of the city.” Friends of the Zoo, 38 S.W.3d at 424. (Emphasis original).

 Applying Friends of the Zoo’s holdings here, we find that the fact that the Commonwealth

Project may have been paid wholly or in part out of public funds is not dispositive of whether PIEA

or the City was “engaged in” the construction of the Commonwealth Project with New Horizons’

workers, therefore, being employed “on behalf of” PIEA or the City.3 As noted above, “public

 3
 Section 290.230.2, RSMo Cum. Supp. 2018, states that, “Only workers that are directly employed by
contractors or subcontractors in actual construction work on the site of the building or construction job shall be deemed
to be employed upon public works.” The term construction of public works “includes, without limitation, the
construction of buildings, structures and improvements of all types” as well as “all work done in the construction or
development of a public works project, including without limitation, altering, remodeling, demolishing existing
structures, …” 8 CSR 30-3.020(1).

 16
works” are defined, in part, as “all fixed works constructed for public use or benefit or paid for

wholly or in part out of public funds.” 290.210(9), RSMo Cum. Supp. 2018. (Emphasis added).

Because public funding is encompassed in the definition of “public works,” the contribution of

public funds to the Commonwealth Project meets only the “public works” criteria of Section

290.230, and additional analysis as to whether a public body is actually engaged in the construction

of those public works is required to meet the full statutory criteria. Although the source of funding

may certainly be a consideration when analyzing all of the facts and circumstances to ensure that

a private entity and public body have not created a façade behind which the public body is engaging

in public works, Friends of the Zoo reveals that public funding cannot be the sole consideration.

 Friends of the Zoo cited State ex inf. Webster ex rel. Division of Labor Standards v. City of

Camdenton, 779 S.W.2d 312 (Mo. App. 1989), in support of its ultimate holding. City of

Camdenton involved the City of Camdenton selling lots to a private developer, with the condition

that the developer construct a firehouse/police station thereon, and that the city be granted a lease

with the option to purchase the improved property. Id. at 313. The project was to be built

according to the city’s plans and specifications; the city retained the right to change those plans;

the city was granted power to supervise the construction; and the city had the power to suspend

production. Id. at 316. The developer was financing the project on behalf of the city. Id. Under

those circumstances, the City of Camdenton court found that the workmen employed on the project

were employed “on behalf of” the City of Camdenton. Id. at 317.

 City of Camdenton can be contrasted with State ex rel. Ashcroft v. City of Sedalia, 629

S.W.2d 578 (Mo. App. 1981). City of Sedalia involved the Missouri Attorney General and Division

of Labor Standards suing to enjoin the City of Sedalia from further work or payments on an

industrial development project financed by industrial revenue bonds. Id. at 579. The State

 17
contended that the city was not in compliance with the Prevailing Wage Act in connection with the

work performed to carry out the industrial development project. Id. The question presented in

that case was ultimately whether the Prevailing Wage Act applied to an industrial development

project consisting of improvements to and the installation of fixtures and machinery in an existing

building owned by a municipality and leased to a private corporation, to be paid for from the

proceeds of industrial revenue bonds, where work on the project was being performed by

contractors under contracts let by the private corporation. Id. at 580.

 The City of Sedalia record showed that the industrial development project involved the

city’s purchase of a building and surrounding acreage, which it then leased to a private company

to renovate and occupy for the purpose of manufacturing rotary screw compressors. Id. The tract

of land and building situated thereon was leased by the city to the private company for a term of

years in consideration of rental payments sufficient to pay the interest on and retire the industrial

revenue bonds upon maturity. Id. at 581. Upon expiration of the lease and payment in full of any

outstanding industrial revenue bonds, the city was obligated to sell, and the private company

obligated to purchase, the tract of land and completed facility for $1,000. Id. It was clearly

delineated in the lease agreement that the private company would renovate the existing building

and install all requisite fixtures and equipment in accordance with its own plans and specifications.

Id. The private company was to contract with various contractors to perform the work. Id. The

proceeds of the industrial revenue bonds were disbursed to the company to reimburse the company

for costs incurred in carrying out the project. Id. The proceeds were disbursed by a trustee

designated in an Indenture of Trust, not by the city. Id. After reimbursement to the company for

all costs incurred in carrying out the project, any excess industrial revenue bond proceeds were to

be used to retire the bonds. Id. All rentals due by the company under the lease were not to be paid

 18
to the city, but to the Trustee designated in the Indenture of Trust. Id. The company was solely

liable for all costs incurred in carrying out the project, and personally guaranteed payment of all

amounts due the holder of the industrial revenue bonds. Id.

 We ultimately concluded in City of Sedalia that, because the city was neither a party to nor

required to be a party to contracts let by the Company to effectuate the industrial development

project, workmen on the project were not employed “by or on behalf of” the city. Id. at 586.

 Application of Law to Undisputed Material Facts

 Considering all of the undisputed facts and circumstances which detail PIEA and the City’s

involvement, or lack thereof, in the construction of the Commonwealth Project, and in light of

Section 290.230 and controlling precedent, we find the Prevailing Wage Act inapplicable to

Appellant’s work on the Commonwealth Project.

 The PIEA recruited private developers to submit proposals for implementation of an

industrial development project to effectuate the City’s end goal of blight remediation in the

Commonwealth Project area, consistent with the City’s goals as previously established in its

General Development Plan. The PIEA offered a City grant of 6.5 million dollars and tax

abatements to incentivize developers to invest in redevelopment of the area. The control the PIEA

and City exercised over the project was directly connected to the tax incentives. Failure of the

Developer to abide by an agreed upon completion date subjected the Developer to potential

forfeiture of tax incentives for uncompleted portions of the Project. While the Development

Contract provides that the PIEA could “terminate the Developer’s rights with respect to such

uncompleted portion of the Project Area,” the PIEA had no contractual right to terminate the

Project without the Developer first breaching the contractual deadline, and the Development

Contract never contemplates that the PIEA or the City would ever control the property itself. The

 19
Development Contract acknowledges that the Developer might need property within the

Commonwealth Project as security for a loan. It provides that, if such is the case and there is an

outstanding balance on a loan at the time tax abatement is revoked and/or the Developer’s rights

to implement the Plan are terminated under the Contract, the Lender would be entitled to intervene

and select a new developer for the project, subject to PIEA approval, or exercise its rights to

foreclose its interest in the subject property. Further, the Developer, and any of its affiliated

entities, had the right to “remove a particular portion of the Project Area from the Plan and

terminate the Tax Abatement with respect to such property[.]” If the Developer chose to do this,

“such real property shall be owned and operated free from any of the conditions, restrictions or

provisions of the Plan and this Contract.” Pursuant to the Development Contract, the tax incentives

were to last for eighteen years from receipt of the Tax Exemption Certificate from the PIEA, as

long as the property is used in accordance with the Plan and Development Contract. After eighteen

years, “such real property shall be owned and operated free from any of the conditions, restrictions

or provisions of the Plan and this Contract.”

 Neither the PIEA nor the City were ever destined to control the properties in the

Commonwealth Project. The properties were privately owned when the PIEA entered the

Redevelopment Agreement and the Development Contract with the Developer. The Development

Contract provides that the Developer had the right upon Project completion to convey title to the

Project to PIEA via quitclaim deed, but PIEA was to “immediately re-convey such property to

Developer” after PIEA delivered the Developer a Tax Exemption Certificate for any conveyed

property. This conveyance was strictly so that the Developer could receive the tax abatement

incentives that were used to induce the Developer to invest in the City’s blight remediation

initiatives. The Development Contract, however, does not require such conveyance.

 20
 The Development Contract further provides that the parties understood that, pursuant to

the project proposal which was initially submitted to PIEA by the Developer, the Developer might

request PIEA exercise its power of eminent domain to clear any title discrepancies that might arise

within the Project Area that the Developer was unable to clear on its own. The Development

Contract provides that clearing of title discrepancies is essential to redevelopment of the area to

serve the public purpose of ameliorating the blighted conditions in the Project Area. If the

Developer was unable to clear such discrepancies and PIEA had to do so through the exercise of

the power of eminent domain, PIEA and the Developer would enter an acquisition agreement

whereby PIEA would agree to convey any such acquired property to the Developer for

redevelopment in accordance with the Development Contract, and the Developer would pay PIEA

all reasonable costs and expenses associated with the acquisitions. The Development Contract

additionally contains numerous provisions relating to the Developer’s agreement to comply with

various Federal and State laws, and city ordinances. With regard to the payment of prevailing

wages, the Development Contract provides that prevailing wages will be paid “in accordance with

the provisions of the Missouri Prevailing Wage Law, R.S.Mo. Chapter 290.210, et seq. …” The

Contract, therefore, contemplates that prevailing wages are only contractually required if required

by law. Nevertheless, even if the Contract requires payment of prevailing wages, this would not

be dispositive as to whether failure to pay those wages is violative of Missouri’s prevailing wage

laws. The fact that the PIEA deemed the prevailing wage laws inapplicable to New Horizons’

employees based upon SWS’s conclusions is similarly non-dispositive.

 In reviewing the summary judgment record, we cannot conclude that the PIEA or the City

was engaged in the construction of the Commonwealth Project such that New Horizons’ workers

could be considered employed by or on behalf of a public body. Contractual provisions and

 21
oversight to ensure that public works desired, encouraged, and incentivized by PIEA and the City

are completed in a timely manner and in compliance with existing laws speak more to the City’s

accountability to its citizenry rather than actual engagement in the construction of public works.

 We find that the circuit court correctly concluded that there is nothing in the factual record

showing that PIEA or the City was involved in the construction of the Commonwealth Project.

The circuit court correctly noted that the “factual record lacks any indication that the plans and

specification for the public works were supplied only by the City or PIEA; no record that the City

or PIEA retained the right to change the plans; no record that the City or PIEA supervised the

construction work in this case.” We agree with the circuit court that the facts in this case are more

akin to City of Sedalia, where the city issued revenue bonds to finance or sponsor construction on

behalf of a private developer, than City of Camdenton, where a private developer financed

construction on behalf of the city. See City of Camdenton, 779 S.W.2d at 317. Because the

summary judgment record shows that neither the PIEA nor the City were engaged in the

construction of the Commonwealth Project, New Horizons’ workers employed under a contract

with subcontractor, The Silliman Group, LLC, were not employed “by or on behalf of any public

body engaged in the construction of public works.”

 Appellant’s point on appeal is denied.4

 4
 Appellant filed a motion for attorney’s fees which was taken with the case. Appellant’s motion is denied.

 22
 Conclusion

 The circuit court did not err in granting New Horizons’ motion for summary judgment.

The circuit court’s Judgment is affirmed.

 Anthony Rex Gabbert, Judge

All concur.

 23